958 F.2d 372
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
DeOndra D. GRAY (91-1242); Frank Johnson (91-1262); Lonnie
L. Griffin (91-1265), Defendants-Appellants.
 Nos. 91-1242, 91-1262, 91-1265.
 United States Court of Appeals, Sixth Circuit.
 March 24, 1992.
 
 Before KENNEDY and RALPH B. GUY, Jr., Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The defendants, Lonnie Griffin, DeOndra Gray, and Frank Johnson, were charged with various federal offenses in an eight-count indictment. In count one, each defendant was charged with conspiring, between September 1, 1987, and April 25, 1990, to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Griffin was charged in counts two and five with attempt to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Griffin and Gray were charged in counts three and four, and Johnson was charged in count four with possessing and aiding and abetting the possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Griffin was further charged in counts six and eight with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and in count seven with violating 31 U.S.C. § 5324(3) for structuring a financial transaction to evade reporting requirements.
 
 
 2
 A jury found the defendants guilty on all counts charged. The defendants were sentenced and filed timely notices of appeal. The issues raised on appeal are (1) the sufficiency of the evidence produced at trial; (2) whether the district court erred in not suppressing a firearm seized and Griffin's statement regarding ownership of the firearm; (3) whether the court erred in admitting certain other statements into evidence; (4) whether the court erred in allowing evidence of Griffin's large cash transactions and payment of a codefendant's attorney fees; (5) whether certain statements made by the prosecutor inflamed the jury; (6) the legality of Griffin's sentence; (7) whether Johnson's counsel rendered ineffective assistance; and (8) whether the district court erred in its jury instruction and in its response to the jury's questions during deliberation. For reasons that follow, we affirm.
 
 II.
 
 3
 Each defendant challenges the sufficiency of the evidence introduced at trial.[1] The defendants complain that there was little direct evidence against them and that a government witness, Calle, was biased because he was hoping to receive a reduced sentence for a narcotics conviction. We review briefly the significant trial evidence.
 
 
 4
 Undercover police officer Underwood testified that on September 3, 1987, he purchased an ounce of cocaine from two drug dealers who said their source was called "Stone." Underwood received the cocaine immediately following the dealers' receipt of a package from a black male passenger in a Jeep with the license plate "STONE." The vehicle was driven by a black female. Title and registration for the vehicle showed that the vehicle was owned by Griffin's father.
 
 
 5
 Two weeks later, Underwood met with the dealers and received four ounces of cocaine. The dealers just had been given the cocaine in a brown paper bag by the same black female who had driven the Jeep to the earlier transaction, and who was now driving a Mustang. The suspects were then arrested.
 
 
 6
 Police officer Maison, who had witnessed the above transactions and arrested the black female, Janice Walton, after the second transaction, also testified. He described the transactions and identified Griffin as the passenger in the Jeep. Maison also encountered Griffin at police headquarters. Griffin owned the Mustang, which had been seized following Walton's arrest, and was seeking its return. Griffin told police that Walton was his girlfriend.
 
 
 7
 Maison also testified that on December 5, 1988, he was to buy cocaine from a man called DeOndra, nicknamed "Dre." The sale was never made. On that date, DeOndra Gray was stopped by police and his vehicle searched. No drugs were found. A drug detection dog alerted to the vehicle interior. The drug detection dog handler gave his expert opinion that narcotics had recently been present. It was later determined that Griffin had sold the car to Gray and that it contained hidden compartments.
 
 
 8
 Walton's testimony confirmed what the officers had described regarding the September transactions. She had lived with Griffin, nicknamed "Stone," between approximately December of 1986 and December of 1990. She stated that Griffin brought home Tupperware containers of cocaine between September or October and December of 1987. Walton would weigh and package the cocaine. Subsequently, over the next three years, Griffin stored Tupperware containers in their basement. He would also bring grocery bags filled with money which she and Griffin would count and wrap in rubber bands. The money, mostly in $5 to $50 denominations, arrived every other week for the next six to twelve months and would total between $20,000 and $50,000. As far as she knew, it never stopped. Defendant Gray, Griffin's cousin whom she called Andre, also brought bags of money. Walton also delivered drugs for Griffin to a car customizing shop owned by Harper.
 
 
 9
 Harper testified that Griffin supported Harper's cocaine habit, between approximately September of 1987 and September of 1989, in exchange for installing secret compartments in vehicles brought in by Griffin. A man named Andre would sometimes deliver the cocaine. Curtis, one of Harper's employees, testified that he installed some of the secret compartments requested by Griffin into vehicles brought to the shop by others, including Gray. Curtis received cocaine or cash from Griffin in exchange for his work. Griffin supplied Curtis with a mobile telephone and beeper to order cocaine. Gray delivered the cocaine to Curtis in about half of the cocaine-for-cash transactions.
 
 
 10
 Calle, an illegal alien from Colombia, testified that he was introduced to Griffin in Miami in late 1988 by Mesa, a/k/a "Paul" or "Pablo," a long-time cocaine dealer for whom Calle worked. Mesa told Calle that Griffin would be working with Calle in the cocaine business. Calle testified regarding the following cocaine transactions with Griffin which formed the bases of counts two through five of the indictment.
 
 
 11
 In February 1989, Calle travelled to Houston and delivered 12 kilograms of cocaine to Gray by agreement with Griffin. Calle had made arrangements with Gray to load the cocaine into secret compartments in Gray's car.
 
 
 12
 Several weeks later in Houston, Calle, pursuant to a deal between Mesa and Griffin, delivered ten kilograms of cocaine to Gray who had arrived on a chartered plane from Detroit.
 
 
 13
 In Las Vegas, in May of 1989, Calle delivered 20 kilograms of cocaine to Gray and Johnson who had arrived by chartered flight from Detroit. The next day, Calle went to Detroit to collect money for Mesa. Griffin confirmed to Mesa that he had received the cocaine.
 
 
 14
 Calle later returned to Detroit to collect from Griffin, for Mesa, the Jeep with the license plate STONE with $35,000 secreted inside, in exchange for one kilogram of cocaine. When in Detroit, Calle would stay in an apartment provided by Griffin. He was at times provided transportation by Johnson.
 
 
 15
 In June of 1989, Mesa sent Calle to Boston pursuant to another deal with Griffin. Griffin had arranged a charter flight to Boston but had no one to accompany it. Calle refused to return on the flight with the drugs. Calle was arrested in Boston in possession of 12 kilograms of cocaine before arrangements could be made to deliver the drugs to Griffin in Detroit.
 
 
 16
 Calle's testimony was supported by other evidence. Gray was travelling with his girlfriend, Charise Mustin, when they were both arrested while returning from Houston in February 1989. The arresting officer found six kilograms of cocaine in each of two secret compartments in Gray's car.[2] Griffin wired money to pay for attorneys for Gray and Mustin, and forged Gray's signature on one of the wire transfers. Mustin testified regarding communication between Griffin and Gray just before they left and while they were in Houston. Hotel expenses for Gray and Mustin were paid by Lonnie's Trucking Company, owned by Griffin. Hotel, telephone, and beeper company records consistent with the testimony of Calle and Mustin were also introduced.
 
 
 17
 The second Houston transaction was supported by records of the air charter service employed, the pilot's identification of Gray, independent testimony regarding arrangements for the flight and limousine service to the airport, and telephone records.
 
 
 18
 Similar evidence supported the Las Vegas transaction. Calle had testified that he, Gray, and Johnson had purchased T-shirts and souvenirs there. This was consistent with the testimony of a limousine driver. The charter pilot did not specifically identify Gray and Johnson but noted that the passengers had souvenirs and T-shirts upon their return to Detroit. Johnson's girlfriend, Michelle Saunders, testified that Johnson said, around the relevant time and in response to her questions regarding a new Las Vegas T-shirt he was wearing, that he had been in Las Vegas and had purchased it there. Testimony and documents indicated that the flight was arranged for "Lonnie."
 
 
 19
 Testimony and documentary evidence regarding the failed Boston transaction showed that a charter flight and limousine service to the address where Calle was arrested had been arranged for Lonnie. The day before Calle's arrest, Gray, Johnson, and their girlfriends drove to Boston, stayed the night, and returned the next morning. Gray had given Mustin only a few hours notice of the trip and had claimed they were going to meet her attorney. The women rarely left the hotel room; Mustin never saw her attorney. Johnson warned Mustin that the women should not drive the car when returning to Detroit. This is consistent with Calle's testimony that Griffin could not arrange for couriers to bring the drugs back to Detroit. It also reflects the fact that Mustin had earlier been arrested in a car in which cocaine was found.
 
 
 20
 McBride, a truck driver for Griffin's company, testified to smuggling drugs for Griffin. McBride sometimes dealt with a man named Paul in Miami who would load packages, sometimes Tupperware containers, into secret compartments in McBride's vehicle. McBride also delivered, from Paul in Florida to Griffin in Detroit, a 9 millimeter pistol equipped with a silencer.
 
 
 21
 We consider the evidence, both direct and circumstantial, in the light most favorable to the government. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Hays, 899 F.2d 515, 518 (6th Cir.) cert. denied, --- U.S. ----, 111 S.Ct. 385 (1990). "[C]ircumstantial evidence alone can sustain a [conviction] and ... [such evidence] need not remove every reasonable hypothesis except that of guilt." United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984) (emphasis in original). "Witness credibility is solely within the province of the jury.... We must affirm a conviction if any rational trier of fact could have found [a] defendant guilty beyond a reasonable doubt." United States v. Schultz, 855 F.2d 1217, 1221 (6th Cir.1988). An accomplice's testimony can support a conviction even when uncorroborated and the accomplice "believed he would personally benefit from testifying against the defendant." Nichols v. United States, 276 F.2d 147, 148 (6th Cir.), cert. denied, 364 U.S. 815 (1960).
 
 
 22
 The evidence was sufficient to sustain the convictions. The government was required to prove that an agreement existed to traffic in cocaine and that the defendants knowingly and intentionally participated in the conspiracy. See United States v. Sanchez, 928 F.2d 1450, 1457 (6th Cir.1991). A defendant may be convicted of conspiracy to distribute drugs upon participation in a single narcotics transaction. See United States v. Renfro, 620 F.2d 569, 575 n. 5 (6th Cir.), cert. denied, 449 U.S. 902 (1980). A slight connection with the conspiracy shown beyond a reasonable doubt is sufficient for conviction. United States v. Betancourt, 838 F.2d 168, 174 (6th Cir.), cert. denied, 486 U.S. 1013 (1988). "To prove aiding and abetting, the government must prove, beyond a reasonable doubt that the defendant[s] (1) associated [themselves] with the crime, (2) intended to bring it about, and (3) sought by [their] actions to make it succeed." United States v. Kelly, 888 F.2d 732, 742 (11th Cir.1989) (citation omitted).
 
 
 23
 The evidence against Griffin was overwhelming and against Gray was substantial. Johnson, who was Griffin's step-brother, contends that he was merely present in Las Vegas when Gray received and counted some packages from Calle. A rational juror could find beyond a reasonable doubt that Johnson actively participated in the Las Vegas transaction. Calle's testimony alone, if believed by the jury, would provide the basis for Johnson's conviction on the substantive count. Additionally, the jury could properly consider the specific Las Vegas evidence against the backdrop of the totality of the evidence showing that Johnson was part of the Griffin conspiracy.
 
 
 24
 There is also ample evidence to support Griffin's firearm convictions.[3] On August 14, 1989, Michigan State Trooper Cardenas stopped Griffin on I-75 after receiving a report of an individual involved in a traffic dispute wielding a handgun. The individual had been standing outside the open driver's door of a vehicle which matched Griffin's. Cardenas testified that he saw Griffin, who was driving, doing or placing something on the vehicle's passenger side prior to stopping him. Cardenas subsequently searched the vehicle and found, on the passenger's side, a loaded .380 caliber semi-automatic pistol.[4]
 
 
 25
 Griffin argues that there was no evidence of actual or constructive possession of the firearm at the time of the stop. He insists that the corpus delecti rule was violated because only subsequent statements made by him in state court implicated him. See United States v. Marshall, 863 F.2d 1285, 1286 (6th Cir.1988) ("defendant's admissions, made after commission of an alleged offense, must be corroborated to guarantee reliability and trustworthiness"). We find these challenges without merit.
 
 
 26
 Clear proof that the alleged criminal act took place or independent evidence corroborating a defendant's admission satisfies the corroboration requirement. Marshall, 863 F.2d 1287. "Both actual possession and constructive possession may be proved by direct or circumstantial evidence." United States v. Beverly, 750 F.2d 34, 37 (6th Cir.1984). Cardenas' testimony was sufficient corroboration.
 
 
 27
 Griffin also claims there was insufficient evidence that he possessed the firearm upon which count eight was based. Griffin was arrested at his business pursuant to a warrant in April 1990 after arriving there in a car belonging to his girlfriend's family. He was immediately advised of his rights. Griffin was asked if he had a wallet and weapons. He responded that he did, that they were in a locked briefcase inside the trunk, and gave the combination. Inside the briefcase was Griffin's wallet and a loaded 9 millimeter pistol. Griffin signed a statement that the firearm was his. A loaded spare magazine for the gun was recovered in a secret compartment in the dashboard of Griffin's car. A rational juror could find that Griffin had the power and intent to exercise control over the firearm.
 
 III.
 
 28
 Griffin also complains that the gun seized from the briefcase and his statement regarding ownership should have been suppressed. He claims that his consent to search the briefcase was given in response to the force used by the arresting agents. He stated that he admitted ownership after the arresting agents "suggested" that he do so in exchange for not arresting his girlfriend. The district court found his account of the arrest "completely incredible" and that he acted voluntarily. (App. 491). We must uphold the court's factual findings and evidentiary ruling unless they are clearly erroneous. United States v. Lambert, 771 F.2d 83, 89 (6th Cir.), cert. denied, 474 U.S. 1034 (1985); United States v. Coleman, 628 F.2d 961, 963 (6th Cir.1980). We find no clear error by the district court. See United States v. Garcia, 866 F.2d 147, 151 (6th Cir.1989) (no justification for disturbing factual finding of district court where we are presented with a "swearing contest ... between the defendant's testimony and that of a police officer").
 
 IV.
 
 29
 Griffin next contends that other evidence should have been excluded. He claims that Calle's testimony regarding statements by Mesa violated his rights to confrontation and a fair trial. He argues that McBride's testimony, evidence that Griffin wired money to Texas for attorneys for Gray and Mustin, and evidence of large cash transactions also deprived him of a fair trial. We disagree.
 
 
 30
 Mesa's statements made through Calle were properly admitted as non-hearsay under Fed.R.Evid. 801(d)(2)(E). The court made the requisite finding, prior to final admission of the testimony, that Mesa was a co-conspirator and the statements were made during the course and in furtherance of the conspiracy. See Bourjaily v. United States, 483 U.S. 171 (1987). Statements admissible under Rule 801(d)(2)(E) do not pose a Confrontation Clause problem. Id. at 182. Nor did Mesa's statements render the trial unfair.
 
 
 31
 McBride's testimony was also properly admitted. Griffin claims that McBride was a surprise witness whose testimony was offered only to show guilt of crimes other than those charged. Griffin knew two weeks before trial that McBride was to testify. McBride, without pressure by the government, declined to talk to Griffin's attorney. Griffin did not seek a continuance or otherwise attempt to prepare for McBride's testimony, nor did he object to McBride's testimony at trial.
 
 
 32
 Since Griffin failed to preserve the objection, we review his claim under the plain error standard. Fed.R.Crim.P. 52(b). Under that standard, the error must be so plain that "the trial judge and prosecutor were derelict in countenancing it." United States v. Hook, 781 F.2d 1166, 1172 (6th Cir.) (quoting United States v. Frady, 456 U.S. 152, 163 (1982)), cert. denied, 479 U.S. 882 (1986). Federal Rule of Evidence 404(b) prohibits introduction of evidence of other crimes offered as circumstantial proof that a defendant acted in conformity with his "bad" character. McBride's testimony concerned Griffin's acts during the course and in furtherance of the conspiracy. Such acts need not appear in the indictment and, since they provide proof of the ultimate issue, do not constitute impermissible evidence of "other crimes" within the meaning of Fed.R.Evid. 404(b). See United States v. Dempsey, 733 F.2d 392, 396 (6th Cir.) (an overt act need not be charged in a § 846 conspiracy), cert. denied, 469 U.S. 983 (1984).
 
 
 33
 Similarly, evidence of Griffin's large cash transactions and his wiring of monies to Texas following the arrest of Gray and Mustin was relevant to the ultimate issue. Griffin claims that such evidence was irrelevant and more prejudicial than probative. The government alleged that Griffin was a leader of a large-scale drug trafficking operation. Large cash transactions, including purchases of beepers, portable telephones, and payment of attorney fees is consistent with this charge. See also United States v. Walton, 908 F.2d 1289, 1303 (6th Cir.) ("one would expect to find some evidence of additional income ... to support a finding of continuous drug dealing"), cert. denied, --- U.S. ----, 111 S.Ct. 532 (1990). Evidence of large cash transactions also supports Walton's testimony regarding bags of cash brought home by Griffin, which bags they subsequently counted and wrapped in rubber bands.
 
 
 34
 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Fed.R.Evid. 403. Griffin made no Rule 403 objection to the wire transfer evidence at trial. See United States v. Acosta-Cazares, 878 F.2d 945, 950-51 (6th Cir.) (where no Rule 403 objection to 404(b) evidence made at trial and therefore no balancing appears in record, we review the record to determine if admission was an abuse of the district court's discretion), cert. denied, 493 U.S. 899 (1989). We do not find the danger of prejudice regarding the wires or other transactions so great that the court erred in its admission.
 
 V.
 
 35
 Griffin also claims that prosecutorial misconduct deprived him of a fair trial. He points to three references during the government's closing argument in which the prosecutor referred to cocaine as "garbage" or "trash" that Griffin was bringing into the community. Griffin claims these comments were impermissibly designed to inflame the jury.
 
 
 36
 Other circuits have held that similar closing argument comments in narcotics trials did not mandate reversal or were not improper. See United States v. Musser, 856 F.2d 1484, 1485-86 (11th Cir.1988) (drug dealing called "dirty, nasty, deadly business" not improper), cert. denied, 489 U.S. 1022 (1989); United States v. Wajda, 810 F.2d 754, 763 (8th Cir.) (cocaine called "plague"), cert. denied, 481 U.S. 1040 (1987); United States v. Peco, 784 F.2d 798, 810 (7th Cir.) (characterization of defendants as "merchants in death" not condoned but in totality of record not reversible error), cert. denied, 476 U.S. 1160 (1986). Even if the comments were outside the bounds of proper argument, reversal would not be required unless the comments resulted in such prejudice so as to render the trial unfair. United States v. Terry, 729 F.2d 1063, 1070 (6th Cir.1984). We cannot conclude that the comments were so incendiary that reversal is required.
 
 VI.
 
 37
 Griffin next challenges his sentence. He first claims that Calle's statement that he delivered 20 kilograms of cocaine in Las Vegas was exaggerated. Calle stated that the 20 kilograms was part of a 200 kilogram shipment. Griffin insists that this was "puffing" and the 20 kilogram amount also must have been overstated. Therefore, the base offense level should be reduced from 36 to 34 to reflect a total involvement of less than 50 kilograms of cocaine. See U.S.S.G. §§ 2D1.1(a)(3), 2D1.1(c)(4) and (5).
 
 
 38
 The amount of drugs involved for sentencing purposes need only be proved by a preponderance of the evidence. United States v. Moreno, 899 F.2d 465, 473 (6th Cir.1990). Our review of sentences is limited. We accept the district court's factual findings unless they are clearly erroneous and give "due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). The district court stated at sentencing that the witnesses were credible and the amount of drugs correctly credited. There was ample testimony of a long-standing and large-scale cocaine operation in which Griffin played a major role. Therefore, the district court's finding that Griffin was accountable for at least 50 kilograms of cocaine is not clearly erroneous.
 
 
 39
 Griffin argues that there was insufficient evidence to support a two-level enhancement for possession of a firearm during the commission of the drug offense. See U.S.S.G. § 2D1.1(b)(1). McBride testified that during the course of his drug smuggling he delivered a semi-automatic pistol equipped with a silencer to Griffin from a co-conspirator (Paul). Police seized a .380 caliber semi-automatic pistol with a clip of ten rounds of live ammunition during the stop of Griffin's car along I-75. Finally, Griffin's briefcase at his arrest contained a 9 millimeter semi-automatic pistol loaded with 15 rounds of live ammunition. The government argues that the weapons were quickly available for use in an emergency to facilitate Griffin's drug trade. We agree and find no clear error in the enhancement. See United States v. Snyder, 913 F.2d 300, 303-04 (6th Cir.1990) (quick availability of firearm supports application of U.S.S.G. § 2D1.1(b)(1)), cert. denied, --- U.S. ----, 111 S.Ct. 709 (1991); United States v. Miller, 910 F.2d 1321, 1328 (6th Cir.1990) (clear error standard for district court's findings regarding § 2D1.1(b)(1)), cert. denied, --- U.S. ----, 111 S.Ct. 980 (1991).
 
 
 40
 Griffin also claims the court erred in increasing his offense level two points for obstruction of justice. See U.S.S.G. § 3C1.1. The court found that Griffin committed perjury; Griffin claims he merely gave inconsistent testimony. At a detention hearing, Griffin stated that he was employed by Haney's Car Stereo as a salesmen of beepers or pagers, that he was paid by commission, and that a vehicle in which he had been observed was made available to him for use in his employment capacity. These statements were flatly contradicted by the owner of Haney's. A two-point enhancement is appropriate when a defendant provides "materially false information to a judge or magistrate." U.S.S.G. § 3C1.1 comment. (n. 3(f)). We find Griffin's claim without merit.
 
 
 41
 Griffin next argues that the district court erroneously calculated his criminal history category. We decline to reach the issue since Griffin's adjusted offense level of 44 yields a life sentence independent of criminal history. See U.S.S.G. Ch. 5, Pt. A.
 
 
 42
 Griffin challenges the district court's refusal to depart downward from the Guidelines. At sentencing, the court stated:
 
 
 43
 Mr. Griffin, the Court has absolutely no discretion in this matter. The guidelines have been held constitutional, and they do require under your circumstances that the Court impose the sentence that the government has requested here.
 
 
 44
 Your counsel has made objections to the factual bases of the presentence report, and those objections I find are not worthy.... [T]here is no justification that the Court can find for a downward departure from the guidelines here.
 
 
 45
 Your counsel suggests that your youth and the fact that you dealt with much older people should be considered, but you are not below an age of discretion. You had other alternatives, and you had a good mind to start off with and a good educational opportunity, a supportive family, and it simply happens that everyone participating in an enterprise may not be prosecuted, but that doesn't lessen the responsibility of those who are.
 
 
 46
 You have made yourself a very powerful symbol in this community to the young people here, and the Court has to treat you like the symbol that you have made yourself, and the guidelines require that I do that.
 
 
 47
 (App. 525-26) (Emphasis added).
 
 
 48
 Ordinarily, a defendant whose sentence is otherwise valid may not appeal a district court's refusal to depart downward from the Guidelines. United States v. Hamilton, 949 F.2d 190 (6th Cir.1991). We may, however, review sentences when the district court erroneously concluded that " 'it could not consider [the] defendant's mitigating circumstances and exercise discretion to depart from the guidelines based upon such consideration.' " Id. at ---- (quoting United States v. Maddalena, 893 F.2d 815, 817 (6th Cir.1989)). Griffin argues the court erred in failing to recognize its authority to exercise discretion.
 
 
 49
 In this case, the district court found as a factual matter that no mitigating circumstances existed. Moreover, the Guidelines expressly provide that a defendant's age is ordinarily irrelevant to departure. U.S.S.G. § 5H1.1. The court noted that "under [these] circumstances ... there is no justification ... for a downward departure[.]" (App. 525). Clearly the court recognized that under other circumstances there may be mitigating circumstances which justify, i.e., permit departure. Therefore, there was no error in the court's refusal to depart downward, and we decline further review.
 
 
 50
 Finally, Griffin argues, for the first time in his reply brief, that his sentence for violation of 31 U.S.C. § 5324(3) (count seven) exceeds the statutory maximum.[5] Section 5322(a) provides a five-year maximum prison term for a section 5324(3) offense. Section 5322(b) provides a ten-year maximum prison sentence when the defendant committed the offense "while violating another law of the United States." Id. Griffin claims that the government failed to specifically charge him with 31 U.S.C. § 5322(b) and, therefore, he cannot be sentenced for more than five years on count seven. Issues raised for the first time in a reply brief are not properly before this court. Boone Coal and Timber Co. v. Polan, 787 F.2d 1056 (6th Cir.1986). Moreover, the claim is without merit.[6]
 
 VII.
 
 51
 Johnson argues that his counsel's assistance was ineffective because counsel portrayed Johnson as a liar, drug user, and thief at trial.[7] Subsequent to filing his notice of appeal, Johnson filed a motion for a new trial in the district court based on trial counsel's alleged ineffective assistance. Fed.R.Crim.P. 33. The district court purportedly denied the motion. Rule 33 provides in relevant part:
 
 
 52
 A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period.
 
 
 53
 Johnson did not file a motion with the court within the seven-day time limit. The district court did not extend the filing date during the seven-day period. Therefore, unless his motion was based on the ground of newly discovered evidence, it was untimely.
 
 
 54
 In United States v. Seago, 930 F.2d 482 (6th Cir.1991), we joined the majority of circuits in "concluding that evidence of ineffective assistance of counsel is not newly discovered evidence for purposes of a motion for new trial where the facts supporting the claim were within the defendant's knowledge at the time of trial." Id. at 489. Johnson knew how counsel portrayed him at trial. "Rule 33 requires that the evidence itself, not merely the legal implications of the evidence, be newly discovered." Id. (citation omitted). Johnson's motion was, therefore, untimely and the district court lacked jurisdiction to consider it.
 
 
 55
 We note that, if Johnson had filed his Rule 33 motion within the seven-day limit, we would be unable to consider his claim. "Under Rule 33, although the district court may not grant a new trial while an appeal is pending without a remand ... the court may deny such a motion." United States v. Hatfield, 815 F.2d 1068, 1073 (6th Cir.1987). A party must file a separate appeal from the district court's denial "within 10 days from the docketing of the district court's order." Id. A timely appeal from the denial "will be consolidated with a pending appeal taken from the judgment of conviction." Id.
 
 
 56
 Johnson filed no appeal from the court's purported denial of his motion for a new trial. Ironically, the double procedural fault (untimely filing in the district court and failure to separately appeal the court's purported denial of the Rule 33 motion) does not defeat our having jurisdiction to consider the claim. We decline to review the issue, however, because the manner in which defendant attempted to raise this issue below resulted in an inadequate record for us to review. See United States v. Gonzales, 929 F.2d 213, 215 (6th Cir.1991).
 
 VIII.
 
 57
 Johnson also argues that he should be granted a new trial because the court did not adequately respond to two of the jury's questions during deliberations.[8] The jury first asked: "Did anyone besides Calle identify Frank Johnson from the stand concerning the 5-16-89 Las Vegas trip?" (App. 532). After receiving no objections, the court responded: "Members of the jury: You have heard all the evidence in the case. Now you must recall it to the best of your collective recollection and make your decisions in accordance with the instructions." (App. 532). The court must exercise discretion in responding to a deliberating jury's questions and "must be careful not to invade the jury's province as fact-finder." United States v. Nunez, 889 F.2d 1564, 1569 (6th Cir.1989). "[T]he propriety of a supplemental instruction must be measured 'by whether it fairly responds to the jury's inquiry without creating ... prejudice.' " Id. at 1568. If the court had said "yes" or explicitly referred to other testimony, Mustin's for example, the jury might have placed undue emphasis upon it. The court could not have said "no" without invading the jury's sphere. We find that the court's response was appropriate and did not constitute plain error. See United States v. Hook, 781 F.2d 1166, 1172 (6th Cir.1986) (plain error standard where objection to jury instructions not made at trial, citing Fed.R.Crim.P. 52(b) and Fed.R.Crim.P. 30).
 
 
 58
 The jury later asked: "In the instructions to the jury, pages 27 and 28 appear to contradict each other. Can the differences be clarified for us?" (App 534). The court, again after no objection was made, responded: "Members of the jury: The 2 instructions are not contradictory. Page 28 states that mere presence or association without more," underlined, "cannot establish guilt. Page 28 [sic] states that aiding and abetting does," underlined, "constitute guilt." (App. 534).
 
 
 59
 Johnson argues that the court should have specifically mentioned the part of the initial instruction indicating knowledge that a crime was being committed does not render one a participant. We disagree. The requirements for participation were fully covered in the court's instructions. Rereading those instructions should have resolved the jury's difficulty. See Nunez, 889 F.2d at 1569 ("If the issue that is the subject of an inquiry has been fully covered in the court's instructions, a reference to or rereading of the instructions may suffice."). The court's response was adequate, created no prejudice, and was not plainly erroneous. See id. at 1568; Hook, 781 F.2d at 1172.
 
 
 60
 Johnson next argues, again for the first time on appeal, that the court erroneously instructed the jury that a "slight connection" to a conspiracy may establish guilt. The instruction accurately stated the law. See United States v. Betancourt, 838 F.2d 168 (6th Cir.1988). The language complained of is identical to that contained in this circuit's model jury instructions.[9] Johnson insists, however, that the instruction could have led the jury to ignore the reasonable doubt standard.
 
 
 61
 We review the language not in isolation but in the context of the entire instruction. United States v. Horton, 847 F.2d 313, 322 (6th Cir.1988). There is no plain error unless " 'the charge, considered as a whole, is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice.' " United States v. Thevis, 665 F.2d 616, 645 (5th Cir.), cert. denied, 456 U.S. 1008 (1982) (quoting United States v. Varkonyi, 645 F.2d 453, 459 (6th Cir.1981)). See also Hook, 781 F.2d at 1172-73 (discussing plain error standard and stating that "an improper jury instruction will rarely justify reversal of a criminal conviction when no objection has been made at trial"). We find that the instruction, considered in its entirety, did not likely mislead the jury regarding the burden of proof required.
 
 
 62
 AFFIRMED.
 
 
 
 [1]
 Gray and Johnson preserved this issue by Fed.R.Crim.P. 29(a) motions; Griffin filed a Fed.R.Crim.P. 29(c) motion. See United States v. Williams, 940 F.2d 176, 180 (6th Cir.), cert denied, --- U.S. ---- 112 S.Ct. 666 (1991). We evaluate their challenges by the same standard. See United States v. Overmyer, 867 F.2d 937 (6th Cir.), cert. denied, 493 U.S. 813 (1989); United States v. Holloway, 731 F.2d 378, 381 (6th Cir.1984)
 
 
 [2]
 This is the same vehicle which Gray purchased from Griffin and which the police searched unsuccessfully after a dog alerted positive to drugs in December 1988
 
 
 [3]
 Griffin does not challenge, however, the sufficiency of the evidence regarding structuring financial transactions
 
 
 [4]
 Cardenas also found four pagers, a mobile telephone, and $5,700 in cash wrapped in rubber bands
 
 
 [5]
 Griffin was sentenced on counts six through eight to concurrent 120-month terms of imprisonment
 
 
 [6]
 Subsequent to oral argument, we granted Griffin permission to file a pro se supplemental brief. Griffin claims in that brief that he was denied ineffective assistance of counsel at trial and on appeal. He raises other issues neither previously briefed on appeal nor raised below. These claims are not properly before us. United States v. Sanchez, 928 F.2d 1450, 1458 (6th Cir.1991) (ineffective assistance of counsel claims raised for the first time on appeal not considered); Polan, 787 F.2d at 1064
 
 
 [7]
 He also initially claimed that counsel advised him not to testify, despite his innocence, because he might implicate his codefendants and would be tricked on cross examination. He has withdrawn this claim
 
 
 [8]
 Johnson also argues that he was prejudiced at trial because the identity of an informant was not disclosed. Appellate counsel is apparently unaware that the informant was on the witness list (presumably identified by name, David Primer, and not as informant "DEA-1"), was available for interview, and did in fact appear at trial
 
 
 [9]
 The jury was instructed and the model language provides:
 This does not require proof that a defendant knew everything about the conspiracy, or all the other members, or that he was a member from the very beginning. Nor does it require proof that a defendant played a major role in the conspiracy or that his connection to it was substantial. A slight role or connection may be enough.
 (App. 535); Pattern Criminal Jury Instructions, Sixth Circuit, 79 (1991).