**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Miguel NUNEZ (88–2089) and Ernesto
Rodriguez (88–2090),
Defendants–Appellants.**

**Nos. 88–2089, 88–2090.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 21, 1989.

Decided Nov. 22, 1989.

---

Donald A. Davis, Asst. U.S. Atty. (argued), John C. Bruha, Grand Rapids, Mich., for U.S.

Robert F. Mirque (argued), Grand Rapids, Mich., for Miguel Nunez.

Riccardo D. Arcaro (argued), Southfield, Mich., for Ernesto Rodriguez.

Before KENNEDY and WELLFORD, Circuit Judges, and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

Disposition of this appeal turns on the response given by the trial court to an inquiry from the jury during deliberations in a criminal case. The court refused to answer two written questions, but reread its earlier instructions on the law of conspiracy. We conclude that the court erred in failing to answer the questions, and that the error was harmless as to one defendant, but prejudicial as to the other.

## I.

Nunez and Rodriguez appeal from conviction of both defendants for drug offenses. The first count of a six-count indictment charged Nunez and Rodriguez with conspiring together, "and with other persons known and unknown to the grand jury," to possess cocaine with intent to distribute and to distribute it, between September 1987 and June 1, 1988. Counts 2, 3, 5 and 6 named only Nunez, charging him with possession of specific amounts of cocaine with intent to distribute, and use of a telephone to facilitate the conspiracy charged in count 1. Both defendants were charged in count 4 with traveling in interstate commerce to promote an unlawful activity. The jury convicted Nunez on all six counts. It convicted Rodriguez on the conspiracy count, but acquitted him on the interstate travel count.

## II.

### A.

A government witness, Tony Allard, testified that Nunez traveled from Texas and sold him cocaine in Michigan in late August or September 1987. Allard stated that he paid part of the purchase price in October and the balance in December 1987, when Nunez was in Michigan again. During the December trip Allard made arrangements to purchase more cocaine. Allard met Nunez and another man at a motel in Benton Harbor. The motel manager identified Rodriguez as the other man, but Rodriguez testified that he was not with Nunez in Michigan in December. Allard supported this testimony, stating that the person with Nunez was not Rodriguez.

Allard testified that Nunez and an unidentified man delivered nine kilograms of cocaine to him at his (Allard's) brother's house. This cocaine was "fronted" to Tony Allard, and he was arrested before he managed to sell all of it. When arrested, Tony Allard still owed Nunez for most of the cocaine. At this point, he began cooperating with federal authorities. Telephone conversations between Tony Allard's brother, Ronnie, and Nunez were recorded, and tapes of the conversations were introduced at the trial. The conversations concerned payment of Tony Allard's debt to Nunez and arrangements for the purchase of more cocaine.

Ronnie Allard and DEA agent Everett Gay testified that they met with Nunez and Rodriguez at a bar in Millburg, Michigan on June 1, 1988. According to the witnesses, they discussed the payment of Tony Allard's debt to Nunez and the possibility of acquiring more cocaine for Gay. Gay testified that after Nunez agreed to furnish him with cocaine, Rodriguez entered the conversation and stated that the final price would depend on the amount purchased. Rodriguez allegedly added that he and Nunez offered the best deal available, and encouraged Gay to try two kinds of cocaine. Gay then told both defendants that his partner was waiting at a nearby hotel with money for a purchase. The "partner" was undercover officer Taylor of the local sheriff's department.

At the hotel both Nunez and Rodriguez told Allard, Gay and Taylor that they had no cocaine with them. After some further

negotiations Taylor left the room to pick up money furnished by the DEA. Taylor testified that when he returned, he handed the money to Rodriguez, who asked if there was a safe place he could hide it. Almost immediately thereafter Nunez and Rodriguez were arrested. A DEA agent monitored the hotel room where the discussions took place, but the transmitter he had placed in the room failed. He was able to hear only the beginning of the conversation, and it was not recorded.

### B.

Both defendants testified at their joint trial. Nunez testified that during three deliveries of cocaine to Tony Allard in September, October, and December, 1987, he was merely acting as a translator for Jose Lopez, the actual dealer. He identified Lopez as a Mexican national who speaks very little English. Nunez admitted that he was aware that Lopez was selling cocaine on each occasion. He also admitted being at the meeting with Ronnie Allard and Gay on June 1 and stated that he was "talking big" with Gay in order to collect money for Lopez. He testified that his only purpose in making the June trip to Michigan was to collect from Allard; that no drugs were sold.

Nunez testified that Rodriguez merely accompanied him on the June trip to look for a job, and that Rodriguez played no part in the alleged transactions. Rodriguez testified that he had worked in Michigan the previous summer and had driven up from Texas with Nunez in June to inquire about working at the same farm in 1988. He denied any wrongdoing, and denied that he participated in any of the discussions concerning cocaine. The general manager of the farm where Rodriguez claimed to have worked testified that Rodriguez was a full-time employee during the summer and fall fruit harvest in 1987. The witness testified that Rodriguez had come to the farm in late May or early June 1988 and had been hired for the harvest beginning in June or July. Rodriguez was working at the farm at the time of the trial in August 1988. Rodriguez's crew leader at

the farm gave similar testimony. The farm was a large, incorporated operation, producing more than 550 acres of fruit, and had been in business for approximately thirty years.

### III.

The jury began deliberations at 2:30 p.m. on the third day of the trial. At 6:15 the jury returned to the courtroom with two written questions addressed to the judge: (1) "Can Rodriguez make an agreement with E. Gay [the DEA agent] to satisfy the agreement element in conspiracy?" (2) "Can Gay be considered a co-conspirator?" The judge responded that these were factual questions that he could not answer for the jury. Defense counsel pointed out that the jury appeared to be asking if Gay, a law enforcement officer, could be a co-conspirator. This would be a question of law, not of fact, and counsel requested an instruction that there could not be a conspiracy between only one of the defendants and Agent Gay. The Assistant United States Attorney agreed that "the only other conspirator can't be a law enforcement officer acting officially." He argued, however, that the court's previous instruction on the elements of a conspiracy was sufficient.

Instead of answering the jury's questions directly, the trial court repeated its earlier definition of a conspiracy. After referring to the statute making a conspiracy to distribute cocaine a separate crime, the court stated:

> What the evidence must show beyond a reasonable doubt is that two or more persons in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan here as charged in the Indictment, I believe Count 1; and that these named Defendants knowingly and willfully became a member and/or originated such conspiracy.
>
> Again, a person can become a member of a conspiracy or an agreement or a kind of partnership in criminal purposes without full knowledge of all the details of the unlawful scheme or the names and

identities of all the other alleged conspirators. So if a defendant has an understanding of the unlawful nature of the plan and knowingly and willfully joins in that plan on one occasion, that is sufficient to convict him for conspiracy even though he had not participated before and even though he may have played only a minor part.

I caution you again that mere presence at the scene of a transaction or event, or the mere fact that persons may be associated with each other and they have assembled together and they have discussed common aims or interests, does not necessarily establish proof of a conspiracy. Again, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances the purpose of one, does not thereby become a conspirator because the person does not have knowledge of the conspiracy.

The jury resumed deliberations at 6:20 and returned its verdicts just fifty minutes later.

## IV.

### A.

■ A trial court "must exercise its sound discretion in determining what type of supplementary instructions should be given to a deliberating jury that seeks clarification of the law." *Davis v. Greer*, 675 F.2d 141, 145 (7th Cir.), *cert. denied*, 459 U.S. 975, 103 S.Ct. 310, 74 L.Ed.2d 289 (1982). When a jury seeks clarification of particular issues, however, the judge should clear away its difficulties "with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). When a jury indicates confusion about an important legal issue, it is not sufficient for the court to rely on more general statements in its prior charge. "A conviction ought not to rest on an equivocal direction to the jury on a basic issue." *Id.* at 613, 66 S.Ct. at 405.

■ This court stated the rule in *United States v. Rowan*, 518 F.2d 685, 693 (6th Cir.), *cert. denied sub nom. Jackson v.*

*United States*, 423 U.S. 949, 96 S.Ct. 368, 46 L.Ed.2d 284 (1975), as follows:

In response to a jury's question after it has begun deliberating, however, a trial judge may and should make clear the law the jury is bound to apply, though it is not his province to advise the jury of collateral aspects of its decision.

The able trial judge in the present case apparently felt that he was heeding the admonition of the last clause of the *Rowan* pronouncement. He expressed concern that the jury was asking whether Gay was acting in an official capacity at the hotel meeting, a factual question. We believe that defense counsel were correct in their interpretation of the jury's questions. The jury was asking whether proof that Rodriguez agreed to a cocaine transaction with Gay would be sufficient to establish a conspiracy. The original instructions did not cover this legal question, and the supplementary instruction did not answer it.

In *United States v. Giacalone*, 588 F.2d 1158 (6th Cir.1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979), we made clear that a supplemental instruction is one that goes beyond reciting what has previously been given; it is not merely repetitive. Reiterating the rule stated in *Rowan* that a trial court has a duty "to clear up uncertainties which the jury brings to the court's attention," we stated that the propriety of a supplemental instruction must be measured "by whether it fairly responds to the jury's inquiry without creating ... prejudice." *Giacalone*, 588 F.2d at 1166.

### B.

The issue raised by the jury's questions in the present case was an important one. Rodriguez denied any participation in the cocaine transactions. He was supported by the testimony of one government witness that he was not Nunez's companion at the time of the earlier meetings with Tony Allard. Two unimpeached defense witnesses, with no apparent interest in the outcome, substantiated his testimony that he inquired about work in the 1988 harvest when he was in Michigan with Nunez in

late May or early June. Rodriguez was not indicted for possession or distribution of cocaine. The jury acquitted him of the charge of traveling in interstate commerce to facilitate an illegal transaction. Thus, the jury's concern related to the fact that the testimony appeared to show that Rodriguez discussed a future sale of cocaine with Gay. The jury pointedly asked if Gay could be a co-conspirator and if an agreement between Rodriguez and Gay would "satisfy the agreement element in the conspiracy."

■ It is settled that "proof of an agreement between a defendant and a government agent or informer will not support a conspiracy conviction." *United States v. Pennell*, 737 F.2d 521, 536 (6th Cir.1984), *cert. denied*, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985). Accord, *United States v. Scaife*, 749 F.2d 338, 346 n. 9 (6th Cir.1984). The district court should have so instructed the jury in response to its questions. We are aware of the fact that questions from a deliberating jury present a dilemma for a trial court. The court must be careful not to invade the jury's province as fact-finder. Nevertheless, the court must respond to questions concerning important legal issues. If the issue that is the subject of an inquiry has been fully covered in the court's instructions, a reference to or rereading of the instructions may suffice. In a case such as the present one, however, rereading the instructions did not answer the question, and could have been interpreted by the jury as responding that an agreement with Gay would be sufficient to establish an unlawful conspiracy.

### V.

■ We have considered the government's arguments and citations. The government is mistaken in stating that Rodriguez never raised the issue of whether an agreement only between him and Gay would be sufficient. Rodriguez's attorney made this very point in his closing argument. Furthermore, the jury raised the issue, and that imposed a duty upon the trial judge to respond. The government

argues that a trial judge should not give supplemental instructions that might add to the jury's confusion. This is doubtless true, but the two cases relied upon by the government are readily distinguishable. In *United States v. Papia*, 560 F.2d 827 (7th Cir.1977), the jury's question was clearly answered by the judge's original instructions. In such a case, rereading correct instructions that covered the issue was less confusing than trying to frame an answer to the jury's specific question. In *United States v. Keck*, 773 F.2d 759 (7th Cir.1985), the trial court answered the jury's question with a supplemental instruction that the court of appeals found was entirely correct. Neither case supports the trial court's failure to respond with a supplemental instruction in the present case.

■ Finally, the government argues that the evidence clearly demonstrates both defendants' guilt, and thus the convictions should not be disturbed. To support this argument the government relies on *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), where the Supreme Court stated that "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." The government misunderstands the *Glasser* rule, which deals with the deference due a properly supported verdict when the defendant claims there was insufficient evidence for the jury to find guilt beyond a reasonable doubt. *Glasser* did not involve a jury's request for additional guidance. Neither defendant made a sufficiency of the evidence argument in this case; both relied specifically and solely on the trial court's failure to make a proper response to the jury's inquiry.

### VI.

■ We conclude that the trial court abused its discretion in failing to instruct the jury on the legal question raised by the jury's inquiry. As to Rodriguez, the failure was prejudicial error. Rodriguez was only charged with conspiracy and interstate travel. Unlike Nunez, he was not charged either with possession or distribu-

tion of cocaine. The jury clearly asked legal, not factual questions. If the court had correctly answered the questions, and the jury believed that the only evidence linking Rodriguez with cocaine transactions consisted of his conversations with Gay, it would have been bound to acquit Rodriguez of the conspiracy charge. The jury found that Rodriguez did not travel from Texas to facilitate the distribution of cocaine. Thus, they apparently believed he did not accompany Nunez on the earlier trips, where the government witness Tony Allard testified he was not present, and that he went to Michigan to arrange summer employment on the trip that he undeniably did make. Rodriguez is entitled to a new trial.

■ The trial court's error arguably affected both defendants. As to Nunez, however, any error was harmless. Nunez admitted traveling to Michigan to facilitate the distribution of cocaine. There was direct evidence that he sold cocaine to Tony Allard and that he collected for the cocaine on several occasions. His only justification was that he was acting for someone else, Jose Lopez. In effect, Nunez's "defense" was that he conspired with Lopez, not with Rodriguez as charged in the indictment. The conspiracy, according to the indictment was between Nunez and Rodriguez, and other known and unknown persons. Nunez supplied the name of another person "unknown to the grand jury" by testifying that he worked for Lopez. It was not necessary to establish a conspiracy between Nunez and Gay. In effect, his testimony on direct and cross-examination amounted to a confession of guilt on all six counts of the indictment. The trial court's error was harmless as it related to Nunez.

The conviction of Nunez is affirmed, and that of Rodriguez is reversed.