966 F.2d 1454
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kevin GARLAND and Clarence Heath, Defendants-Appellants.
 Nos. 91-1638, 91-1656.
 United States Court of Appeals, Sixth Circuit.
 June 18, 1992.
 
 Before DAVID A. NELSON and RYAN, Circuit Judges, and FORESTER, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Defendant Kevin Garland appeals his jury conviction and sentence for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2, and defendant Clarence Heath appeals his jury conviction for conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846, 841 and for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. They raise the following issues on appeal:
 
 
 2
 1) Whether the district court abused its discretion in denying Heath's motion to sever his and Garland's cases and in admitting Garland's redacted post-arrest statements;
 
 
 3
 2) Whether the district court abused its discretion in allowing the introduction of testimony concerning the seizure of certain of Heath's property in connection with this case;
 
 
 4
 3) Whether the district court abused its discretion in giving a supplemental jury instruction on aiding and abetting;
 
 
 5
 4) Whether the district court erred in ruling in limine that the government could use a prior conviction to impeach Garland if he testified;
 
 
 6
 5) Whether Garland's conviction was supported by sufficient evidence; and
 
 
 7
 6) Whether the district court erred in refusing to give Garland a four point reduction under the Sentencing Guidelines for minimal participation?
 
 
 8
 For the reasons that follow, we affirm the convictions of both Garland and Heath and Garland's sentence.
 
 I.
 
 9
 Defendants Kevin Garland and Clarence Heath were indicted along with Renard Jackson and Mark Schleuter in a five-count indictment, charging the defendants with various drug-related crimes. Garland and Heath were each indicted on one count of conspiracy to distribute cocaine and one count of possession with intent to distribute cocaine. Defendants Jackson and Schlueter pled guilty and agreed to testify for the government. Garland and Heath pled not guilty and their cases were tried together before a jury.
 
 
 10
 The government's case consisted chiefly of the following evidence:
 
 
 11
 In August and September of 1989, special agents of the Drug Enforcement Administration (DEA) conducted an undercover operation involving four drug transactions with Renard Jackson. The fourth of these transactions also involved defendants Garland and Heath.
 
 
 12
 Special Agent David Jacobson was the undercover purchaser of the cocaine for each of the four transactions. The first three purchases were made from Renard Jackson and involved small amounts of cocaine, ranging from one ounce to four and one half ounces. Following the third sale, agent Jacobson negotiated with Jackson for the purchase of half of a kilogram of cocaine. Jackson agreed to make the transaction on September 12, 1989.
 
 
 13
 On September 12, Jackson had difficulty locating a supplier and made several phone calls in an effort to obtain the cocaine. After securing the cocaine, Jackson instructed Jacobson to meet him at a furniture store located at the corner of Seven Mile Road and Telegraph Road in the city of Detroit.
 
 
 14
 Agent Jacobson proceeded to the furniture store and upon entering the parking lot observed Jackson and Mark Schlueter in a Chevy Blazer. He also observed a Pontiac Sunbird in the parking lot and identified defendant Clarence Heath as the driver and defendant Kevin Garland as the passenger. Jacobson testified that the Sunbird was "crawling, almost, slowly through the lot, then pulled out, went into the Amoco [gas station across the street] with the driver looking throughout the area, visually scanning the area." At one point, the drivers of the Blazer and Sunbird pulled their vehicles parallel to each other and engaged in a conversation. Jacobson concluded that the occupants of the Sunbird were conducting surveillance for police in the area.
 
 
 15
 Several other DEA agents testified at the trial. Agent Michael Nussbaum was agent Jacobson's partner and was carrying the money for the final purchase of cocaine. He traveled in a separate car. Nussbaum testified that upon arriving at the location for the final transaction, he pulled into a gas station across the street from the furniture store parking lot. He observed the Pontiac driven by Defendant Heath leave the furniture store parking lot and pull into the gas station lot directly behind his undercover vehicle. He further testified that he observed defendant Garland point conspicuously in his direction. Nussbaum then saw the Pontiac drive away.
 
 
 16
 Special Agent Joseph Rannazzisi corroborated much of the testimony of agents Jacobson and Nussbaum and also testified concerning an oral statement that he took from defendant Garland. The statement incriminated both Garland and Heath in the drug transaction. Because Garland elected not to testify, the district court ordered that his statement be redacted to omit all references to defendant Heath. The government complied with that order and the district court admitted agent Rannazzisi's testimony concerning the redacted portions of Garland's statement.
 
 
 17
 Rannazzisi testified that Garland stated that he arrived at 18920 Prairie (Heath's residence) to play basketball. While he was there, a man he later learned to be Renard Jackson received a phone call. Garland further stated that a short time later he went on "a run." He entered a Pontiac automobile and went to the furniture store parking lot. Once there, he observed a police surveillance van and pointed to what he believed was another surveillance vehicle at the gas station. Garland informed agent Rannazzisi that when he saw the police van he realized something was wrong and that at that point he knew about the drug deal and decided to "bail out."
 
 
 18
 In addition to the testimony of the various DEA agents involved in the investigation, the government also called two of the participants in the drug deals as witnesses. Renard Jackson testified that Garland and Heath supplied him with the cocaine for the final attempted transaction. Jackson explained that he went to Heath's residence to get the cocaine on the morning of the day scheduled for the last transaction. According to Jackson, Garland was already at Heath's residence when he arrived. Jackson testified that he had not met Garland before that day and did not discuss the drug deal before the cocaine arrived. He further testified, however, that as he prepared to leave, Garland handed him the package of cocaine.
 
 
 19
 Jackson had provided a written and signed statement to DEA agents after his arrest. He did not mention Garland in that statement and indicated that he had obtained the cocaine from under the bushes at Heath's house. At trial, Jackson testified that he had lied in the earlier statement and that in truth he received the cocaine from Garland and Heath.
 
 
 20
 Mark Schleuter also testified for the government. He acknowledged that he knowingly participated in the drug deal on the day in question. He picked up Jackson at Jackson's residence in a black Chevy Blazer and drove to Heath's residence. He further testified that after he dropped Jackson off, he left the residence to get some gas for the Blazer. Upon returning, Jackson informed him that he had the cocaine. Schleuter testified, however, that he did not observe Garland hand the cocaine to Jackson as Jackson got into the Blazer.
 
 
 21
 The jury found both Garland and Heath guilty on Count V, possession with intent to distribute, but found only Heath guilty on Count I, conspiracy to distribute, acquitting Garland on that count. The district court sentenced Heath to 60 months imprisonment, followed by three years supervised release, with a special assessment of $100. Garland was sentenced to 57 months imprisonment, followed by three years supervised release, with a special assessment of $50. Their timely appeals followed.
 
 II.
 
 22
 We address first the defendants' contention that the district court erred in denying their motion to sever their cases for trial. Defendants Garland and Heath were tried together. Before trial, Heath moved for severance of the two cases under Fed.R.Crim.P. 14 on the ground that the government intended to introduce, as evidence at their joint trial, an out-of-court statement by Garland that would incriminate Heath in potential violation of Heath's sixth amendment confrontation rights. As an alternative to severance, the government offered to redact Garland's statement. The court denied the motion to sever and allowed the admission of the redacted statement.
 
 
 23
 Garland's original statement indicated that he and Heath left Heath's residence together to go on a "run" and that Heath was the driver of the car. It further indicated that after Garland realized "cops" were involved, Heath then told him that "they were doing a drug deal." Finally, it indicated that Garland told "Heath to drive behind the [gas] station and advised Heath that he was going to 'bail out' if he wasn't taken home." The redacted statement eliminated all references to Heath and in so doing also eliminated all references to the conversations between Heath and Garland.
 
 
 24
 Before the redacted statement was offered at trial, Heath objected to the sufficiency of the redaction and again moved to sever the trials. The district court denied the motion to sever and overruled the objection to the redacted statement. Counsel for Garland also objected to the redaction, arguing that it was prejudicial because it left out exculpatory references to Garland. The court overruled this objection as well.
 
 
 25
 In light of its admission of Garland's statement, the court instructed the jury that "a statement made outside of court by one defendant may not be considered as evidence against the other defendant. If any of these defendants gave a statement, then that statement is to be considered only against the declarant or the defendant that made that statement."
 
 
 26
 On appeal, Heath argues that the admission of Garland's redacted confession violated his sixth amendment confrontation rights. Garland also challenges the redaction, arguing that it was unfairly prejudicial. Moreover, on the basis of their objections to the redaction, the defendants also contend that the district court erred in denying Heath's motion to sever their cases for trial.
 
 
 27
 Before we turn to the severance issue, we first address the defendants' complaints regarding the admission of portions of Garland's redacted statement. We begin with Heath's argument that the admission of Garland's out-of-court statement violated his sixth amendment confrontation rights. In Bruton v. United States, 391 U.S. 123, 126 (1968), the Supreme Court held that a defendant is deprived of his sixth amendment right of confrontation when a facially incriminating confession of a nontestifying codefendant is admitted at their joint trial, even if the court instructs the jury to consider the confession only against the defendant who made the statement. Id. In reaching this decision, the court abandoned its historic practice of presuming that a jury follows its instructions because
 
 
 28
 there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial.
 
 
 29
 Id. at 135-36 (citations omitted).
 
 
 30
 More recently, however, the Supreme Court has narrowed the circumstances under which it will abandon the presumption that juries follow their instructions. In Richardson v. Marsh, 481 U.S. 200, 208 (1987), the court held that the admission of a confession of a nontestifying defendant that had been redacted to omit all references to a codefendant did not violate the codefendant's confrontation rights. The court distinguished the case from Bruton on the ground that "the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial (the defendant's own testimony)." Id. at 208 (footnote omitted).
 
 
 31
 In this case, defendant Garland's out-of-court statement was redacted to omit all specific references to defendant Heath. In this regard, the case closely parallels Richardson. Heath attempts to distinguish Richardson, however, on the ground that in Richardson the evidence linking the codefendant to the confession came from the codefendant's own mouth, while in his case, the government linked Garland's statement to Heath by a variety of its own proofs. This distinction lacks significance. The Court's reasoning in Richardson was broad and applies equally well to cases where the linking evidence is provided by the government's proofs as to cases where the linkage is provided by the codefendant's own testimony:
 
 
 32
 Where the necessity of such linkage is involved, it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence. Specific testimony that "the defendant helped me commit the crime" is more vivid than inferential incrimination, and hence more difficult to thrust out of the mind. Moreover, with regard to such an explicit statement, the only issue, is plainly and simply, whether the jury can possibly be expected to forget it in assessing the defendant's guilt; whereas with regard to inferential incrimination the judge's instruction may well be successful in dissuading the jury from entering onto the path of inference in the first place, so that there is no incrimination to forget. In short, while it may not always be simple for the members of a jury to obey the instruction that they disregard an incriminating inference, there does not exist the overwhelming probability of their inability to do so that is the foundation of Bruton's exception to the general rule.
 
 
 33
 Id. at 208.
 
 
 34
 Defendant Heath concedes that Garland's redacted statement does not refer directly to him but argues that by referring to his car and his residence, it incriminates him by direct and obvious inferences. Inferential incrimination, however, is exactly what the Supreme Court permitted in Richardson. We therefore conclude that the district court's admission of Garland's redacted statement did not violate Heath's sixth amendment right of confrontation.
 
 
 35
 We turn now to Garland's argument that the redaction of his statement was unfairly prejudicial because it eliminated portions of the statement that tended to exculpate him. Garland's defense at trial was that the government failed to prove beyond a reasonable doubt that he knowingly participated in the drug transaction. Garland contends that his unredacted statement supported his defense that he was an innocent bystander while the redacted statement unfairly implied that he was a knowing participant in the drug transaction.
 
 
 36
 We disagree. Our review of Garland's original statement and the redacted portions admitted into evidence indicates that the redaction was neither more nor less incriminating than the original statement. Garland's chief complaint is that by omitting references to Heath, the redaction implies that he drove to the scene of the attempted transaction by himself. The direct testimony of several government witnesses that Heath was the driver of the car, however, certainly dispelled any possibility of this implication.
 
 
 37
 Garland also argues that the unredacted statement suggests that he learned of the drug transaction from Heath after they arrived at the furniture store parking lot. The redacted statement, of course, omitted this reference to defendant Heath. Nevertheless, agent Rannazzisi testified that Garland stated that it was only after viewing the surveillance vehicles that he knew about the drug deal. This testimony captured the essence of Garland's original statement. The omission of Heath's name and remarks did not make the statement more incriminating. The redaction was therefore not substantially prejudicial to Garland's defense.
 
 
 38
 Now that we have dealt with the defendants' objections to the admission of the redaction, we may examine their claim that the district court abused its discretion in denying their motion to sever. We review a district court's denial of a motion to sever for abuse of discretion. United States v. Zalman, 870 F.2d 1047, 1053 (6th Cir.), cert. denied, 492 U.S. 921 (1989). As a general rule in conspiracy cases, persons jointly indicted should be jointly tried. Id. Moreover, "to justify reversal of a criminal conviction upon a district court's denial of a motion to sever, the defendant has the burden of proving that substantial prejudice resulted from the court's failure to grant a separate trial." Id.
 
 
 39
 The defendants offer only one basis for finding substantial prejudice. They contend that the district court's failure to grant separate trials resulted in substantial prejudice because it necessitated the admission into evidence of Garland's redacted statement. For the reasons discussed above, however, we conclude that the admission of the redacted statement did not substantially prejudice either defendant's case. We therefore conclude that the district court did not abuse its discretion in denying the defendants' motion to sever.
 
 III.
 
 40
 We turn next to defendant Heath's contention that the district court erred in allowing the government to inquire into the seizure of certain of his property during its redirect examination of DEA agent Jacobson.
 
 
 41
 During the cross-examination of agent Jacobson, the attorney for Garland asked him if any property was seized and forfeited in connection with this case. Jacobson responded affirmatively, and counsel for Garland then asked if any of that property belonged to Garland. Jacobson replied that it did not. On redirect, the government pursued this line of questions and asked Jacobson if any property had been taken from either defendant. Counsel for Heath objected on relevancy grounds but the court overruled the objection. Jacobson testified that property had been seized from one of the defendants. When asked from whom, he replied that it had been seized from Heath. Counsel for Heath then moved for a mistrial but the court denied the motion. On appeal, Heath contends that Jacobson's testimony regarding the seizure of his property was irrelevant and prejudicial and should have been excluded under Rule 403 of the Federal Rules of Evidence.
 
 
 42
 This court "has stated that the decision as to whether evidence is admissible under Rule 403 is left to the sound discretion of the trial court, and has emphasized that the value of the evidence must be substantially outweighed by its prejudicial character in order to justify its exclusion under Rule 403." United States v. Castro, 908 F.2d 85, 88 (6th Cir.1990) (emphasis in original) (citation omitted).
 
 
 43
 Defendant Heath argues that any probative value of agent Jacobson's testimony regarding the seizure of Heath's property was substantially outweighed by its prejudicial character. Specifically, he argues that it was prejudicial because it gave rise to an inference that he had been found liable in a civil forfeiture proceeding and that such an inference might have unduly swayed the jury to find him guilty in this criminal trial.
 
 
 44
 Heath did not object when counsel for Garland first asked agent Jacobson if property had been seized in connection with this case and if property had been seized from Garland in particular. He objected only when the government asked on redirect if property had been seized from either defendant in the case. The government argues that this objection was not timely and should have been made when counsel for Garland first broached this subject with agent Jacobson.
 
 
 45
 Rule 103(a)(1) of the Federal Rules of Evidence provides that the admission of evidence may not be found erroneous unless a "substantial right" of the party is affected and a timely objection or motion to strike appears on the record. Fed.R.Evid. 103(a)(1). Rule 103(d) provides, however, that "[n]othing in this rule precludes taking notice of plain errors affecting substantial rights...." Fed.R.Evid. 103(d). Heath does not argue that the admission of this testimony amounted to "plain error." Rather, he contends that his objection was timely. He maintains that the government exceeded the scope of cross-examination during its redirect of agent Jacobson. On cross-examination, Jacobson testified that some property had been seized but that it had not been Garland's. On redirect, the government asked him whose property had been seized. Heath argues that there was no need to ask this question and that it exceeded the scope of the cross-examination. He therefore concludes that his objection during the government's redirect was timely.
 
 
 46
 We disagree. Jacobson's answer to Garland's counsel's question arguably raised an inference that neither Heath's nor Garland's property had been seized. Heath attempted to take advantage of this potentially beneficial inference by not objecting to the questions by Garland's counsel. Then, when the government attempted to dispel the potentially beneficial inference on redirect, Heath objected to the prejudicial effect of the testimony. Rule 103(a) does not permit this sort of tactical gamesmanship with regard to evidentiary objections. See United States v. Jimenez, 618 F.Supp. 799, 804 (S.D.N.Y.1985), aff'd, 789 F.2d 167 (2d Cir.1986). If Heath believed that agent Jacobson's testimony regarding the seizure of property was irrelevant and prejudicial, he should have objected as soon as the topic was raised by Garland's counsel. He was not entitled to take advantage of the possibly beneficial inference raised by Jacobson's answers to the questions of his codefendant's counsel and yet preserve his right to object when the government attempted to dispel that inference on redirect. We therefore conclude that Heath waived his objection by failing to make it contemporaneously to agent Jacobson's testimony on this matter during cross-examination.
 
 
 47
 Moreover, even if the district court erred in admitting this testimony, the error was harmless beyond a reasonable doubt. The government presented substantial evidence of Heath's guilt. In light of that evidence, the admission of agent Jacobson's testimony on the seizure of Heath's property had little, if any, likelihood of affecting the outcome of Heath's trial and therefore, even if erroneous, does not require reversal of Heath's conviction. See Chapman v. California, 386 U.S. 18, 22 (1967); Coury v. Livesay, 868 F.2d 842, 845-46 (6th Cir.1989).
 
 IV.
 
 48
 The next issue for consideration is Garland's complaint that the district court erred in giving a supplemental jury instruction on aiding and abetting. During the course of their deliberations, the jurors asked the district court to clarify the instruction on aiding and abetting. In response to the question, the court gave the jury some supplemental instructions. Among other things, it instructed them that "the aiding and abetting statute permits the jury to find the guilty [sic] of the accused without proof that the accused personally did every act constituting the offense charged." The court further instructed them that mere presence at the scene of a crime is not enough; the accused must "commit an act which helps bring about the result." Finally, the court emphasized that in order to be guilty of aiding and abetting, the accused must "willfully and knowingly associate himself with the venture, that he participate in the venture as in something he wishes to bring about. In other words, that he seek by his actions to make the venture succeed."
 
 
 49
 Garland complains that the district court's supplemental instructions on aiding and abetting were misleading because they overemphasized the element of performing an act that aids in bringing about the illegal result and failed to explain adequately the element of intent to bring about the desired result.
 
 
 50
 The decision on what type of supplementary instruction to give the jury rests within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. United States v. Nunez, 889 F.2d 1564, 1568 (6th Cir.1989). In giving supplemental instructions, the trial court is obligated "to clear up uncertainties which the jury brings to the court's attention." Id. at 1568 (quoting United States v. Giacolone, 588 F.2d 1158, 1166 (6th Cir.1978), cert. denied, 441 U.S. 944 (1979)). The district court's instruction in this case fulfilled that obligation. The jury asked for clarification on the elements of aiding and abetting. Contrary to Garland's suggestion, the court not only mentioned the element of intent but explained it at some length near the end of its supplemental instructions. We therefore conclude that the district court did not abuse its discretion in this regard.
 
 V.
 
 51
 We next examine defendant Garland's argument that he was denied a fair trial by the district court's ruling in limine allowing the government to use an Ohio conviction for drug trafficking to impeach him if he decided to testify. Counsel for Garland made an oral motion in limine to exclude this conviction, arguing that under Federal Rule of Evidence 609(a) its prejudicial effect would outweigh its probative value. Garland's counsel did not make an offer of proof regarding the substance of her client's proposed testimony, and Garland did not take the stand in his own defense.
 
 
 52
 We need not reach the merits of Garland's assignment of error in this regard because the Supreme Court has held that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." Luce v. United States, 469 U.S. 38, 43 (1984). Garland did not testify. He therefore failed to preserve his claim of error under Rule 609(a) for appellate review.
 
 VI.
 
 53
 The next issue for our consideration is whether there was sufficient evidence to support Garland's conviction. "In determining the sufficiency of the evidence to support a guilty verdict 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Pearce, 912 F.2d 159, 161 (6th Cir.1990) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)), cert. denied, 111 S.Ct. 978 (1991). In applying this standard, the court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.
 
 
 54
 Garland argues that the government failed to introduce sufficient evidence that he knowingly participated in the drug deal. We disagree. Although the government did not present direct evidence of Garland's intent, it provided more than sufficient evidence for a rational jury to infer that Garland knowingly aided and abetted Heath in preparing for the drug deal in question. Renard Jackson testified that Garland was present at Heath's house while efforts were being made to acquire the cocaine and that Garland personally handed him the package containing the cocaine. Furthermore, Mark Schleuter testified that Garland accompanied Heath to the location of the anticipated deal to look for police. Although the credibility of these witnesses was certainly suspect, it was for the jury to decide whether to believe them. Moreover, several DEA agents confirmed that Garland was at the scene where the transaction was scheduled to take place. Those agents also testified that Garland appeared to identify undercover police vehicles while he and Heath were at the location of the planned transaction.
 
 
 55
 Taking this evidence in the light most favorable to the government, as we must, it was more than sufficient to support Garland's conviction. The district court therefore properly denied Garland's motion for judgment of acquittal.
 
 VII.
 
 56
 The final issue we must address is whether the district court erred in failing to find, for the purpose of sentencing, that Garland was a minimal participant in the drug deal. One day before his sentencing, Garland moved for a reduction in his base offense level for minimal participation. He made two arguments in support of his motion. First, he contended that the testimony implicating him in the deal was not credible and should be ignored. Second, he argued that he was entitled to the reduction because he was not involved in the previous three transactions charged against his codefendants and his role in the last transaction was allegedly limited to pointing out police surveillance vehicles. The district court rejected these arguments and declined to give him the requested reduction.
 
 
 57
 A district court's decision regarding whether a defendant was a minimal participant is a finding of fact and is therefore reviewed for clear error. United States v. Daniels, 948 F.2d 1033, 1036 (6th Cir.1991), cert. denied, 112 S.Ct. 1279 (1992).
 
 
 58
 We turn first to the relevant guideline. U.S.S.G. § 3B1.2(a) directs the sentencing court to reduce a defendant's offense level by four levels, "[i]f the defendant was a minimal participant in any criminal activity." The first application note under this section provides additional guidance:
 
 
 59
 Subsection (a) applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of the others is indicative of a role as minimal participant.
 
 
 60
 U.S.S.G. § 3B1.2(a), comment. (n.1).
 
 
 61
 Although Garland was clearly less culpable than some of his codefendants, the district court had sufficient evidence to conclude that he was not a minimal participant. Garland argues that he was found guilty of participating in only one of four attempted transactions. That transaction, however, was by far the largest of the four, involving half a kilogram of cocaine, while the other three involved only a few ounces each. Garland also contends that at most the government proved that he was only a "lookout." We find no reason to conclude that a "lookout" is necessarily a minimal participant in a crime. Moreover, the evidence indicated that Garland also may have been involved in the procurement of the cocaine and its delivery. In short, the district court's conclusion that Garland was more than a minimal participant was supported by the evidence and therefore was not clearly erroneous.
 
 VIII.
 
 62
 For the foregoing reasons, we AFFIRM the convictions of both Garland and Heath and we also AFFIRM Garland's sentence.
 
 
 
 *
 The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation