NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0053n.06

No. 22-3105

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 25, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| DALE E. SEARS, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: SUHRHEINRICH, COLE, and MURPHY, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Dale E. Sears appeals his felon in possession of a firearm conviction. Because none of his assignments of error have merit, we affirm his conviction.

**I.**

In 2013, Sears was convicted of a class-4 Felony, attempted theft of means of transportation, which carried a maximum sentence of three years' imprisonment. On April 27, 2020, the Geauga County Sheriff's Office removed firearms and ammunition allegedly belonging to Sears from a home on Crestwood Drive in Middlefield, Ohio, owned by Sears's sister. Sears was living there with Erin Havel, their three children, and five of her children from a previous relationship (who called Sears "stepdad"). The police had been called to the residence three days earlier and removed Sears to the local jail. On the 27th, Havel had the weapons ready and waiting outside on the hood of her car, apparently for the police's convenience. Included in the cache was

a 10/22 .22 caliber semiautomatic Ruger rifle and a 9-millimeter Taurus semiautomatic handgun, approximately 2,235 rounds of .22 caliber ammunition, and 100 rounds of 9-millimeter ammunition.

Sears was charged with one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The parties submitted joint jury instructions, including the Sixth Circuit pattern instructions defining actual and constructive possession. The court instructed the jury on actual and constructive possession before any trial testimony and at its conclusion.

The jury returned a general guilty verdict, and in a special verdict form specifically found that Sears possessed the Ruger rifle and any round of ammunition, but not the Taurus handgun. Sears filed a motion for acquittal or alternatively for a new trial, contending that the testimony did not support the verdict and that, as the jury's questions during deliberations revealed, it had "lost its way." The district court denied it. The court felt that Sears's "speculation regarding the mindset of jurors" had "no bearing on the Court's manifest weight review." The court also held that merely because the jury found that Sears possessed one gun and not the other did not undermine the verdict because the jury was not obligated to accept Havel's testimony in its entirety.

The court sentenced Sears to 46 months' imprisonment and three years of supervised release. This timely appeal follows.

**II.**

**A.**

During deliberations the jury submitted five questions to the court. Question number three and the court's response are directly at issue on appeal. The jury asked:

If we determine as a point of fact that Mr. Sears had access to the firearms in the safe and knew that he had access, does that meet the requirements of constructive possession?

The government said that the answer should be "yes"; Sears advocated for a "no". The court provided a different answer: "I've given you all the law that I am permitted to give you regarding possession. After making any findings of fact, it is solely your role to determine whether those facts satisfy the legal standards I've given you." Sears lodged an objection.

Prior to that, the jury asked, "Number one, does access mean physical control?" and "Number two, . . . use of the word 'and' on page 12 [of the jury instructions] . . . . Does that apply to the three parts of constructive possession which is outlined on page 9?" In response to question one, the court explained that "[a]ccess is not equivalent to physical control but is one factor among others to be considered by you" and responded "No" to question number two.[1] Sears did not object to either answer.

Sears claims that these questions viewed collectively lay bare the jury's confusion "about the tripartite nature of the findings required for constructive possession." The government counters that "[t]he jury's third question asked the court to tell it whether it should find that constructive possession existed if certain conditions were met." Under either characterization, the court's supplemental instruction to question number three was proper.[2]

---

[1] The court instructed the jury that the "and/or" instruction applied to the indictment, not to the elements of the constructive possession definition.

[2] Sears does not challenge the court's responses to questions number one and two. Sears also states that the original constructive possession instruction was correct.

When responding to a jury's question, a court "may and should make clear the law the jury is bound to apply." *United States v. Davis*, 970 F.3d 650, 662 (6th Cir. 2020) (quoting *United States v. Rowan*, 518 F.2d 685, 693 (6th Cir. 1975)). The court also "must be careful not to invade the jury's province as fact-finder." *Id.* (quoting *United States v. Nunez*, 889 F.2d 1564, 1569 (6th Cir. 1989)); *see generally id.* (noting that when analyzing a court's response to jury questions, we distinguish between questions of law and questions of fact).

If, as Sears insists, the jury asked a legal question, then the district court rightly referred the jury back to the original, concededly correct, definition. *Compare United States v. Berry*, 290 F. App'x 784, 791 (6th Cir. 2008) (on plain-error review, original jury instructions on the elements of conspiracy adequately addressed jury question whether the act of selling drugs is equal to a conspiracy so no supplemental instruction was necessary); *with Nunez*, 889 F.2d at 1568–69 (holding that the jury should have received a supplemental instruction because the original instructions did not inform the jury that, for the agreement element of a conspiracy charge, a defendant cannot agree with a government agent); *see also United States v. Fisher*, 648 F.3d 442, 448 (6th Cir. 2011) (noting that the defendant's challenge to the jury instructions was more akin to *Berry* than *Nunez*). But the jury's second question demonstrates that they knew constructive possession has three elements, so we favor the government's perception of the question on appeal.[3] With its response, the district court avoided overstepping its role and invading the jury's fact-finding province by telling the jury to apply the law provided to the facts. No abuse of discretion here. *See Davis*, 970 F.3d at 662.

---

[3] We note that the district court correctly rejected the government's suggestion at trial to answer "yes" to the third jury question, which suffers the same flaws as Sears's argument.

**B.**

Next, Sears asserts the evidence does not show that he intended to exert control over the Ruger rifle, because the only two people who presented evidence on that point "lack[ed] all credibility in fact."[4] He therefore maintains that the evidence does not support the conviction.

To sustain a § 922(g) conviction, the government had to prove that Sears (1) had a prior felony conviction, (2) knew it, and (3) knowingly possessed a firearm or ammunition that (4) traveled in interstate commerce. *United States v. Ward*, 957 F.3d 691, 696 (6th Cir. 2020). Both actual and constructive possession satisfy the possession element of § 922(g)(1). *United States v. Brooks*, 987 F.3d 593, 601 (6th Cir. 2021). To "actually" possess a gun, it must be within a person's "immediate power or control." *United States v. Walker*, 734 F.3d 451, 455 (6th Cir. 2013) (citation omitted). "Constructively" possessing a gun means that a person "does not have possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over [the gun], either directly or through others." *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007) (citation omitted).

The evidence established both actual and constructive possession.[5] First, the evidence of actual possession. Seth Hamburg, Havel's son and Sears's "stepson," testified that he was with Sears when Sears's friend, David Somrack, aka "Ruben," purchased the Ruger rifle from the Great Lakes Outdoor Supply Store in Middlefield, Ohio. (Somrack actually purchased it on March 25, 2020. Hamburg waited in the car while Sears and Ruben went inside the store. Ruben carried the Ruger rifle to Sears's car, handed it to Sears, and departed in a separate vehicle. Sears and

---

[4] Sears does not meaningfully challenge (i.e., develop an argument to) any of the other elements of his § 922(g)(1) conviction.

[5] Because sufficient evidence supported a finding that Sears physically possessed the Ruger, the district court did not analyze whether Sears also constructively possessed the rifle.

Hamburg drove back to the Crestwood Drive residence and Sears carried the rifle inside. Hamburg further testified that he saw Sears assemble and fire this weapon on a shooting trip.

Havel testified that she saw Sears assemble the Ruger in a shed on the property. Sears also admitted to Havel that he was a convicted felon and could not own or possess guns. Thus, both Hamburg and Havel testified that Sears actually possessed the Ruger rifle, which sufficiently connected Sears to the Ruger. *See United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (en banc).

Sears contends that neither Hamburg's nor Havel's testimony can be credited because it "does not fit the verifiable timeline of the purchase"—March 25, 2020. According to Sears, Hamburg wasn't reliable because he testified that the shooting trip took place around 2016 in the summertime. And though he claimed that they took the Taurus handgun shooting, he mistakenly identified it as a .45 caliber ACP at trial. Sears insists that Havel's testimony lacks credibility because she testified that there was snow on the ground when she saw Sears assembling the Ruger in their shed even though the gun was purchased in late March. And Havel's timing of events is especially fishy considering that in April 2020, when she reported the guns to the authorities, Havel was pregnant by another man, whom she married in December 2020. Furthermore, Sears testified that he did not go to the Great Lakes Store with Ruben and Hamburg, did not possess a Ruger rifle, did not take Hamburg shooting, and did not have guns hanging on a rack in his bedroom.

But on appeal we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "In making this determination, however, we may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Martinez*, 430 F.3d 317, 330

(6th Cir. 2005). Moreover, "[w]e draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997). Though defense counsel assiduously poked holes in Hamburg's and Havel's accounts on cross-examination, the jury obviously believed them and not Sears. Both testified that they saw Sears handle the Ruger. Both testified the weapons and ammunition were in Sears's and Havel's shared bedroom (which they recovered for the officers). Their testimony was consistent with each other and therefore formed a sufficient foundation for Sears's conviction. There is no basis for reversal.

Sears also argues that the jury actually *acquitted* Sears of actual possession, which is why they asked several questions about the meaning of constructive possession. In other words, had the jury found that Sears actually possessed the Ruger and ammunition, it would have convicted him on that count. We do not engage is such speculation, however.

The trial testimony also supported a constructive possession theory. Hamburg stated that he retrieved firearms and ammunition from Sears's bedroom on April 27, 2020. Havel testified that Sears began collecting weapons and ammunition in 2017 or 2018 and that he kept a .45 caliber handgun on the headboard on his side of the bed in their bedroom. Heather Hamburg (Sears's "stepdaughter") testified that Sears kept four or five guns on a gun rack in the bedroom. We have repeatedly held that weapons found in a defendant's bedroom or personal space are evidence of constructive possession. *See, e.g.*, *United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005); *United States v. Malone*, 308 F. App'x 949, 952–53 (6th Cir. 2009) (collecting cases).

Finally, Sears's own words certainly cast doubt on his assertion that he did not knowingly possess any weapons with an intent to exert control over them. While in the local jail between April 24 and April 27, 2020, Sears was asked by a friend, "So do you need me to go to your house tomorrow?" Sears replied: "If, if you really want to, . . . just go take all the tools. You know what

I mean by that? . . . Your, yours, yours, and the rest of em." The government played this recorded conversation for the jury. Any reasonable juror could have inferred that Sears was asking the friend to pick up the friend's weapons as well as Sears's weapons. *Cf. United States v. Kaiser,* 2022 WL 17547516, at *6 (6th Cir. Dec. 9, 2022). The jury could have further inferred that Sears intended to exercise control over the latter by directing a friend to pick them up.

In sum, there was sufficient evidence for a rational trier of fact to infer that Sears knew he possessed the Ruger under both theories of possession.

## C.

Sears also contends that the jury's verdict was against the manifest weight of the evidence entitling him to a new trial. He maintains that the court failed to clarify for the jury that constructive possession has three elements, not two, which led the jury to improperly convict when there was no reliable, credible evidence that Sears had an intent to exert control over the firearms.

A district court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). That standard is met when "the jury's verdict was against the manifest weight of the evidence." *United States v. Munoz*, 605 F.3d 369, 373 (6th Cir. 2010) (cleaned up). "Generally, such motions are granted only 'in the extraordinary circumstance where the evidence preponderates heavily against the verdict.'" *United States v. Hughes*, 505 F.3d 578, 592–93 (6th Cir. 2007) (quoting *United States v. Turner*, 490 F. Supp. 583, 593 (E.D. Mich. 1979)). When evaluating a Rule 33 motion, a district court may act as a thirteenth juror, weighing the evidence and deciding if the witnesses are credible. *Id.* We are limited to determining whether the court's ruling was "a clear and manifest abuse of discretion." *Id.*

The evidence and verdict are not out of sync here. For starters, the court gave accurate instructions, properly referred the jury back to them, and therefore in the process avoided usurping the jury's job of applying the law to the facts.

Additionally, the record reflects that the district court properly performed its limited role as the thirteenth juror. It observed that "Hamburg's testimony was often jumbled and likely confusing to the jury. He offered testimony about firing the 10/22 rifle but stated that the event occurred years before the rifle had been manufactured." And the court readily acknowledged that "the jury heard cross-examination that a reasonable jury could have believed called into question [Havel's] credibility in certain aspects." On balance, however, the evidence did not "preponderate[] heavily against the verdict" because "Hamburg was able to describe with detail the events surrounding the purchase of the rifle, including that another party, later identified as David Somrack, emerged from the store where it was purchased with the weapon. Somrack then handed the weapon to Sears who took it to the home." Furthermore, Hamburg's and Havel's stories were consistent with each other, and his phone call to a friend did not help his cause either. We find no abuse of discretion.

## III.

The judgment of the district court is **AFFIRMED**.