66 F.3d 327
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Eric TAYLOR, a/k/a "Shug," Defendant/Appellant.
 No. 94-3853.
 United States Court of Appeals, Sixth Circuit.
 Sept. 6, 1995.
 
 Before: KENNEDY and SUHRHEINRICH, Circuit Judges, and HILLMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Eric Taylor was convicted by a jury of two counts of possession of more than five grams of cocaine base with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1), 21 U.S.C. Sec. 841(b)(1)(B)(iii), and 18 U.S.C. Sec. 2, and of one count of possession of a firearm during and in relation to a drug-trafficking offense, in violation of 18 U.S.C. Sec. 924(c) and 18 U.S.C. Sec. 2. He was sentenced in the district court to a 157-month term of imprisonment. He appeals his conviction and sentence. For the reasons stated below, we AFFIRM Taylor's conviction but REMAND for resentencing.
 
 I.
 
 2
 In August 1992, the Columbus, Ohio, police received complaints that 1197 Fair Avenue, Apartment B, was a narcotics stash house. On August 11, 1992, Detective James Day set up surveillance. He observed Taylor leave the apartment and approach a taxi cab that had pulled up to the curb near the apartment. As Taylor spoke to the passenger in the cab, three other individuals approached the apartment. Taylor left the cab and went to meet them. One of the individuals handed Taylor a large fold of money. Taylor immediately returned to speak to the passenger in the cab. The three individuals and the cab subsequently left the area and Taylor re-entered the apartment. One-half hour later, the same three individuals returned to the apartment. Taylor admitted into the apartment the person who had handed him the money. Shortly thereafter, this person left the apartment and was followed by police to another suspected drug trafficking site.
 
 
 3
 Surveillance the following day disclosed Wesley Coates entering the apartment, leaving the apartment, and then engaging in what appeared to be drug transactions with a number of individuals. Detective Day also observed Taylor and Latisha Blackwell entering the apartment. Taylor used a key to open a deadbolt lock on the door of the apartment. Taylor subsequently left with the individual who had handed him the fold of money the previous day. When Taylor returned, he used a key to enter the apartment.
 
 
 4
 On August 14, 1992, Coates, Taylor and Blackwell were again observed entering the apartment. Shortly thereafter, three teenage boys were admitted to the apartment. After the three boys left, Coates left the apartment. Minutes later, a search warrant was executed. Police found Taylor and Blackwell lying on a sleeping bag in the living room of a small, largely vacant, one bedroom apartment. A pager and a key to the apartment were found where Taylor had been lying. Police also found 2.6 grams of heroin on top of a television near the sleeping bag. Searching the bedroom, police found 9.5 grams of cocaine base in the pocket of a pair of pants in the closet. They also found a triple beam scale and a pistol in the closet. A number of empty plastic bags that appeared to have been used to hold cocaine base were found in a trash can in the hallway.
 
 
 5
 Taylor and Blackwell were both arrested. Coates, found a short distance away, was also arrested. All three were charged in state court with two counts of Aggravated Trafficking for the cocaine base and the heroin found in the apartment. Taylor was released on bond. Because he failed to appear for subsequent court hearings, a warrant was issued for his arrest.
 
 
 6
 On August 19, 1993, almost one year later, Officers Randy Smith and Kevin Tilson of the Columbus Police Department were working in plain clothes in an unmarked police car. They spotted Taylor in the front passenger seat of a car headed the opposite direction. Aware of the warrant for Taylor's arrest, the officers radioed for assistance, and followed the car for approximately two minutes as it made a series of turns on side streets and alleys. Officer Smith testified that the cars were traveling at approximately 25 miles per hour, and that the distance between them ranged between one and four car lengths. Officer Smith also testified that Taylor made a number of movements inside the car such as repeatedly turning to see if they were being followed, twice reaching underneath his seat, as well as reaching into the back seat behind the driver. Subsequently, marked police cruisers converged on the car and stopped it. As officers removed Taylor from the car, they saw a semi-automatic pistol with a high capacity magazine under the front passenger seat. This pistol, which was loaded, was later determined to have been stolen. Searching Taylor, police discovered 9.5 grams of cocaine base in his pants pocket. A search of the car revealed 6.6 grams of cocaine base in an open purse behind the driver's seat. Further investigation showed that the plastic bags containing the drugs were tied in the same manner as the bags containing the drugs were tied in the same manner as the bags containing the cocaine base found at the Fair Avenue apartment. The driver of the car, Leslie Wooten, was not detained.
 
 
 7
 Taylor was indicted on three counts stemming from his arrest on August 14, 1992. Count I charged possession with intent to distribute the cocaine base found in the closet. Count II charged possession with intent to distribute the heroin found on top of the television. Count III charged possession of a firearm in connection with a drug trafficking offense based on the pistol found in the closet. Taylor was also indicted on two counts stemming from his arrest on August 19, 1993. Count IV charged possession with intent to distribute the cocaine base found in his pocket. Count V charged possession of a firearm in connection with a drug trafficking offense based on the pistol found under the passenger seat.
 
 
 8
 At his detention hearing, Taylor admitted being at a "crack house" from which police recovered cocaine base, heroin, and a revolver. At trial, Taylor admitted that he sold cocaine base in Columbus on and off from 1990 until his arrest on August 19, 1993. He did not contest Count IV.
 
 
 9
 The jury convicted Taylor on Counts I, IV, and V, and acquitted him on Counts II and III. He received a 97-month sentence for the cocaine base possession counts and a consecutive 60-month sentence for the firearm count. He appeals both his conviction and sentence.
 
 II.
 
 10
 Taylor claims that the evidence was insufficient to find he possessed the cocaine base charged in Count I or that he possessed the firearm in relation to a drug trafficking crime charged in Count V.
 
 
 11
 In reviewing the sufficiency of the evidence for a conviction following a jury trial, we consider the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences drawn from the evidence. United States v. Davis, 981 F.2d 906, 908 (6th Cir.1992), cert. denied, 113 S.Ct. 2361 (1993). A strong presumption exists in favor of sustaining a jury conviction. United States v. Peters, 15 F.3d 540, 544 (6th Cir.), cert. denied, 115 S.Ct. 219 (1994). If "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original), we must sustain the conviction.
 
 
 12
 A conviction for possession with intent to distribute requires the government to show a defendant: "(1) knowingly; (2) possessed a controlled substance; (3) with intent to distribute." Peters, 15 F.3d at 544. "Possession" can be actual or constructive. It can also be exclusive or joint. United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.), cert. denied, 414 U.S. 866 (1973). Actual possession exists when a person has immediate possession or control of an object. Constructive possession exists when a person "knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." Id. Possession may be proven by direct or circumstantial evidence. "It is not necessary that such evidence remove every reasonable hypothesis except that of guilt." Id. (citations omitted)
 
 
 13
 Taylor claims there was insufficient evidence that he possessed the cocaine base found in the closet of the Fair Avenue apartment. However, Taylor was observed using a key to enter the apartment. He was also seen admitting individuals to the apartment, and by implication, excluding others. At the time the search warrant was executed, a key to the apartment was found on the floor under Taylor. These facts created a legitimate issue for the jury and we conclude a rational trier of fact could have found beyond a reasonable doubt that Taylor had constructive possession of the apartment.
 
 
 14
 Defendant contends that an individual who spends considerable time in another's apartment, or even lives there, does not automatically possess drugs found on the premises. United States v. Zeigler, 994 F.2d 845, 848 (D.C.Cir.1993). Accord, Peters, 15 F.3d at 544. However, the jury could find the apartment in question was a stash house, not a residence. No part of the stash house was under the control of one person to the exclusion of others. Taylor testified that only a sleeping bag, a television, and a VCR were in the apartment. An arresting officer testified that the bedroom did not contain a bed. Latisha Blackwell testified that the apartment's lessee, a friend of her uncle's, no longer lived at the apartment. Despite having transferred the electric utility into her name, Blackwell testified that she did not live at the apartment. She claimed to have control over the keys to the apartment given to her by the lessee. However, when asked if anyone was living at the apartment in August of 1992, she stated: "No. I don't know." On similar facts, the D.C. Circuit found possession with intent to distribute crack cocaine. United States v. Lindsey, 47 F.3d 440, 444-445 (D.C.Cir.1995), petition for cert. filed, May 3, 1995.
 
 
 15
 Moreover, Taylor was observed engaging in what appeared to be drug sales outside the apartment. At least one individual from whom he had accepted a substantial amount of money was admitted to the apartment. Taylor also admitted having sold cocaine base in the area for several years. The jury could infer that defendant knew of the presence of the cocaine base from his statement at his detention hearing that "he was aware it was there." A stash house needs a stash. If, as the surveilling officer testified, defendant and Coates were selling drugs out of this house, they needed a supply to sell. On these facts, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Taylor had constructive joint possession of the cocaine base found in the pocket of a pair of pants in the bedroom closet.
 
 
 16
 Taylor also claims insufficient evidence exists that he used or carried the semi-automatic pistol in the automobile in relation to a drug trafficking crime. The statute, 18 U.S.C. Sec. 924(-c), provides in pertinent part:
 
 
 17
 Whoever, during and in relation to any ... drug trafficking crime, ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years....
 
 
 18
 We have construed "used" and "carried" expansively for purposes of section 924(c). See United States v. Acosta-Cazares, 878 F.2d 945 (6th Cir.), cert. denied, 493 U.S. 899 (1989).
 
 
 19
 Merely being a passenger in an automobile is insufficient to demonstrate the "requisite knowledge, power, or intention to exercise control" required to find constructive possession of weapons hidden in the automobile. United States v. Birmley, 529 F.2d 103, 107-108 (6th Cir.1976). Here, however, Taylor twice was observed reaching under the front passenger seat. The pistol was clearly visible to the officers who removed Taylor from the front passenger seat prior to their search of the car.
 
 
 20
 Moreover, in considering whether a gun was carried in relation to a drug trafficking crime, we have held it proper to examine the "totality of the circumstances surrounding the commission of the crime: the emboldened sallying forth, the execution of the transaction, the escape, and the likely response to contingencies that might have arisen during the commission of the crime." United States v. Brown, 915 F.2d 219, 226 (6th Cir.1990). A rational trier of fact could conclude beyond a reasonable doubt that Taylor had placed the gun under the passenger seat, where he had ready access to it, to secure the delivery of the cocaine base. See United States v. Ramos, 861 F.2d 228, 230 (9th Cir.1988).
 
 III.
 
 21
 Taylor next raises one evidentiary issue and two jury instruction issues. Because he did not raise these issues at trial, we review under the plain error standard. United States v. Morrow, 977 F.2d 222, 228 (6th Cir.1992) (en banc), cert. denied, 113 S.Ct. 2969 (1993); United States v. Newcomb, 6 F.3d 1129, 1139 (6th Cir.1993). This standard permits reversal "only in exceptional circumstances, ... and solely to avoid a miscarriage of justice." United States v. Hook, 781 F.2d 1166, 1172 (6th Cir.), cert. denied, 479 U.S. 882 (1986) (citations omitted).
 
 
 22
 Taylor first claims that the district court erred in admitting into evidence testimony of Special Agent Rodney Russell of the Bureau of Alcohol, Tobacco and Firearms. Russell testified concerning statements made by Taylor during a detention hearing held prior to trial. According to Russell, Taylor stated that he knew the cocaine base, the heroin, and the firearm were in the apartment. Taylor claims that the government should have been required to produce the original recording of the detention proceeding rather than using Russell's recollections.
 
 
 23
 A witness' statement which is the party-opponent's own statement offered against the party-opponent is specifically allowed by Fed.R.Evid. 801(d)(2). For this reason, Taylor's first claim under the plain error standard is without merit.
 
 
 24
 Taylor next claims the court gave an incomplete and misleading response to a question posed by the jury. During its deliberations, the jury asked the court the following question: "To be in possession does the defendant have to know the exact location of the drugs within the house?" After discussing the question with counsel and obtaining their concurrence, the court directed the jury to review the written copy of the charged instructions on possession already provided. Taylor claims that by emphasizing the possession instruction, the court failed to remind the jury that possession must be knowing.
 
 
 25
 Trial courts, when presented with questions from a deliberating jury, must not invade the jury's province as fact-finder. However, trial courts must respond to questions concerning legal issues. United States v. Nunez, 889 F.2d 1564, 1569 (6th Cir.1989). A court should refer the jury to a previously given instruction only if the issue that is the subject of the jury's inquiry is fully covered in the instruction. Otherwise, the court should address the question with "concrete accuracy," Id., at 1568 (citations omitted), not relying on the "general statements in its prior charge." Id.
 
 
 26
 The jury's question reveals its concern was not whether Taylor knew drugs were in the apartment, but whether Taylor's knowledge was sufficient for him to exercise dominion and control over the drugs. The court appropriately focused the jury's attention on concepts such as actual and constructive possession, and sole and joint possession. Further, the instructions on possession included a caution that the mere presence of the accused in a house where drugs were found is insufficient to establish knowing possession. No plain error exists in the court's response to the jury's question.
 
 
 27
 Finally, Taylor asserts that the district court committed plain error when it instructed the jury on reasonable doubt. The court stated:
 
 
 28
 It is not required that the Government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense. The kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such convincing character that you would be willing to rely upon and act upon it unhesitatingly in the most important of your own affairs....
 
 
 29
 A reasonable doubt exists whenever, after the careful--after the careful, entire and impartial consideration of all the evidence in the case that the jurors do not feel an abiding conviction to a moral certainty that a defendant is guilty of the offense charged. So, if the jury--so, if the jury views the evidence in this case as reasonably permitting either of two conclusions, one of innocence and the other of guilt, the jury should, of course, adopt the conclusion of innocence.
 
 
 30
 Relying on Victor v. Nebraska, 114 S.Ct. 1239 (1994), Taylor argues that the phrase "moral certainty" in the context of the instruction misled the jury regarding the "very high level of probability required by the Constitution in criminal cases." Id., at 1247. In other words, it is Taylor's claim that by using the expression "moral certainty," the jury could have convicted Taylor on a standard below that required by the Constitution.
 
 
 31
 In Victor, the Supreme Court counseled against using the phrase "moral certainty" in instructions on reasonable doubt. However, the Court found no violation of due process when the instructions which contained the phrase were considered in their entirety. Id., at 1251.
 
 
 32
 While it used the disfavored phrase, the district court below provided an alternative explanation of reasonable doubt. It used a formulation specifically approved by the Supreme Court when it stated that reasonable doubt was "the kind of doubt that would make a reasonable person hesitate to act." Id., at 1250. The district judge further stated that proof beyond a reasonable doubt was "proof of such convincing character that you would be willing to rely upon and act upon it unhesitatingly in the most important of your own affairs." The court's language is a paraphrase of 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions Sec. 11.14 (3d ed. 1977). In Victor, the Supreme Court observed that the Devitt & Blackmar instruction was one of two "widely used in the federal courts...." Victor, 114 S.Ct. at 1248. Additionally, the "moral certainty" language in the instruction was tempered by the phrase "an abiding conviction." Id., at 1247. Reviewing these instructions in their entirety, we are satisfied they meet the requirements of Victor and do not contain plain error.
 
 IV.
 
 33
 Taylor claims that the district court erred in determining his relevant conduct for purposes of sentencing. The court held him responsible for the 9.5 grams of cocaine base and the 2.6 grams of heroin seized in 1992 from the Fair Avenue apartment, as well as the 9.5 grams of cocaine base Taylor was carrying and the 6.6 grams of cocaine base found in 1993 in the purse behind the driver of the car. Taylor does not contest the 9.5 grams of cocaine base he was carrying in 1993. However, he contends the trial court's findings were inadequate with regard to the rest of the drugs.
 
 
 34
 When reviewing a sentence under the guidelines, we apply a clearly erroneous standard to the district court's factual findings and a de novo standard to the court's legal conclusions. United States v. Smith, 39 F.3d 119 (6th Cir.1994).
 
 
 35
 The guidelines state, in pertinent part, that the base offense level to be used for sentencing includes, "in the case of a jointly undertaken criminal activity ... all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity ..." U.S.S.G. Sec. 1B1.3(a)(1)(B). We have held in a case involving several co-conspirators that a court must make findings with respect to both the reasonable foreseeability and scope of a criminal enterprise before any individual conspirator may be held responsible for all the acts of the conspiracy. United States v. Jenkins, 4 F.3d 1338, 1346-47 (6th Cir.1993), cert. denied, 114 S.Ct. 1547 (1994).
 
 
 36
 Taylor asserts that the district court's findings regarding the criminal activity at the Fair Avenue apartment have no evidentiary support. Factual findings for application of the Sentencing Guidelines need only be supported by a preponderance of the evidence. United States v. Carroll, 893 F.2d 1502, 1506 (6th Cir.1990). A defendant's acquittal on one count does not bar the district court from considering the conduct in determining the defendant's base offense level under the Sentencing Guidelines. United States v. Moreno, 933 F.2d 362 (6th Cir.), cert. denied, 502 U.S. 895 (1991).
 
 
 37
 The court found that testimony at trial demonstrated Taylor had equal access to the apartment, and equal responsibility for what occurred there. The court also found that it was reasonable to believe Taylor was aware of the drugs in the apartment. These findings are supported by the facts discussed at length in our consideration of the sufficiency of the evidence for Count I, above. The findings of the court are not clearly erroneous.
 
 
 38
 Taylor further asserts that the court failed to make findings concerning the scope of the criminal activity jointly undertaken by him and Leslie Wooten, the driver of the car in whose purse 6.6 grams of cocaine base were found. The district court treated the cocaine base found in the purse as part of a jointly undertaken criminal activity governed by U.S.S.G. Sec. 1B1.3(a)(1)(B). As noted above, this section requires the sentencing court to make findings with respect to both the reasonable foreseeability and the scope of a criminal enterprise before a defendant can be sentenced for jointly undertaken activity.
 
 
 39
 In attributing the cocaine base found in the purse to the defendant, the court stated:
 
 
 40
 Testimony elicited at trial revealed that after the stop of a car in which the Defendant was riding, a search of the Defendant revealed the possession of crack cocaine, and a search of the car revealed more crack cocaine. Thus, the Court finds by the preponderance of the evidence that the Defendant could reasonably foresee that there might be the additional crack cocaine in the car.
 
 
 41
 While the district court made a finding as to forseeability, it failed to do so as to the scope of the criminal enterprise. For this reason, we vacate that portion of defendant's sentence dependent upon the cocaine base found in Wooten's purse, and remand for resentencing based on further findings pursuant to Sec. 1B1.3(a)(1)(B).
 
 V.
 
 42
 Taylor challenges the enhancement of his sentence for obstruction of justice under U.S.S.G. Sec. 3C1.1. He claims the district court failed to make adequate factual findings. A district court has "discretion to determine whether perjury has occurred." United States v. Zajac, No. 94-6356, 1995 WL 461521, at * 2, 1995 U.S.App. LEXIS 20,691, at * 6 (6th Cir. August 7, 1995). However, if a district court determines obstruction of justice has occurred by perjury, "it has no discretion, and must apply Sec. 3C1.1." Id. (citations omitted). We apply the clearly erroneous standard to a district court's application of section 3C1.1. Id., at * 2, 1995 U.S.App. Lexis 20,691, at * 7.
 
 
 43
 A witness commits perjury when he: (1) gives false testimony; (2) concerning a material matter; (3) with the wilful intent to provide false testimony. United States v. Dunnigan, 113 S.Ct. 1111, 1116 (1993).
 
 
 44
 If the defendant objects to the enhancement, "a district court must review the evidence and make independent findings" to support the enhancement. Id. at 1117. We have previously held that to meet the requirements established by Dunnigan, "the sentencing judge must identify for the record at least some specific instances of conflicting testimony and specify which portions of the defendant's testimony he finds materially perjurious." United States v. Spears, 49 F.3d 1136, 1143 (6th Cir.1995) (citations omitted). The sentencing judge "must, at least briefly, explain why the intentional perjury was material. Id. (citations omitted). Further, "the sentencing judge, who has the unique 'opportunity ... to judge the credibility of the witnesses,' [is required] to make a clear finding that the defendant has lied with respect to testimony given under oath." Zajac, 1995 WL 461521 at * 3, 1995 U.S.App. LEXIS 20,691 at * 8 (citation omitted).
 
 
 45
 The district court, responding to Taylor's objections to the presentence report, stated:
 
 
 46
 The Defendant objects to the enhancement for Obstruction of Justice ... Based on all of the evidence which this Court heard at trial, the Court finds by the preponderance of the evidence that the Defendant did commit perjury when he testified at trial and denied the possession of the amount of crack cocaine found in 1992, and denied possession of the crack cocaine and the gun found in 1993. Therefore, the objection is DENIED.
 
 
 47
 Here, the court did not identify with sufficient specificity instances of conflicting testimony and which portions of Taylor's statements were intentional material lies. Nor did the court specifically assess the credibility of the defendant as a witness in order to make a clear finding he lied under oath. Therefore, we vacate the obstruction of justice enhancement and remand for resentencing based on more specific findings with regard to Taylor's alleged perjury.
 
 VI.
 
 48
 Finally, Taylor claims that the district court improperly denied him a reduction in his base offense level for acceptance of responsibility under U.S.S.G. Sec. 3E1.1. The court found that because Taylor accepted responsibility for only one of the three counts for which he was convicted, he was not entitled to the credit. A district court's decision to deny a sentence reduction for acceptance of responsibility is reviewed under the clearly erroneous standard and is accorded great deference. United States v. Zimmer, 14 F.3d 286, 289 (6th Cir.1994).
 
 
 49
 Because Taylor denied responsibility for two of the three counts on which he was convicted, the district court did not err in declining to reduce his sentence under section 3E1.1.
 
 VII.
 
 50
 For the reasons stated above, remand for further factual findings and resentencing is necessary. In all other respects, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Douglas W. Hillman, United States District Judge for the Western District of Michigan, sitting by designation